1  Mark R. Thierman SBN 72913, NSB 8285
   **THIERMAN LAW FIRM**
2  7287 Lakeside Drive
3  Reno, NV 89511
   Tel: (775) 284-1500
4  Fax: (775) 703-5027
5  Email: laborlawyer@pacbell.net

6
   Shaun Setareh SBN 204514
7  **LAW OFFICES OF SHAUN SETAREH**
8  9454 Wilshire Blvd., Penthouse 3
   Beverly Hills, CA 90212
9  Tel:  (310) 888-7771
10 Fax :  (310) 888-0109
   Email:  setarehlaw@sbcglobal.net
11

12 Attorneys for Plaintiffs

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15

16

17 CARLOS A QUEVEDO, individually  )    Case No.: CV09-1522 GAF (MANx)
   and on behalf of other persons similarly )
18 situated,                       )    **PLAINTIFF'S MEMORANDUM**
                                    )    **OF POINTS AND AUTHORITIES**
19                                  )    **IN SUPPORT OF MOTION TO**
              Plaintiff,            )    **CERTIFY CLASS**
20                                  )
21      vs.                         )    **FED. R. CIV. P. 23**
                                    )
22                                  )    Hearing Date:  March 29, 2010
   MACY'S, INC.; MACY'S            )    Hearing Time:  9:30 a.m.
23 DEPARTMENT STORES, INC. and      )    Location: Courtroom  740
24 DOES 1 through 10 inclusive,     )    Judge:  Hon. Gary A. Feess
                                    )
25            Defendants.           )
26                                  )
                                    )
27                                  )
                                    )
28

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1

# TABLE OF CONTENTS

2

## Federal Cases

*Aiken v. Obledo,*
   442 F. Supp. 628, 658 (1997)...................................................17

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591, 117 S.Ct. 2231, 2246 (1997)...............................…...20

*Anderson v. City of Albuquerque,*
   690 F2d 796, 799 (10th Cir. 1982)..............................................12

*Anderson v. Mt. Clemens Pottery Co.,*
   328 U.S. 680, 687-688 (U.S. 1946).............................................10

*Arenson v. Whitehall Convalescent and Nursing Home, Inc.,*
   164 F.R.D. 659, 662 (U.S. Dist., 1996)......................................14

*Baldwin & Flynn,*
   149 F.R.D. 598, 601 (1993).....................................................12

*Blackie v. Barrack,*
   524 F.2d 891, 901 n.17 (9th Cir. 1975).......................................12

*Bogosian v. Gulf Oil Corp.,*
   561 F.2d 434, 456 (3rd Cir. 1977).............................................18

*Buttino v. FBI,*
   1992 U.S. Dist. LEXIS 21919 (N.D.Cal. 1992)..........................….....13

*Davy v. Sullivan,*
   354 F.Supp. 1320 (1973).......................................................14

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156, 177-78, 94 S.Ct. 2140 (1974)...........................…....11, 21

*General Tel. Co. of Southwest v. Falcon,*
   457 U.S. 147, 102 S.Ct. 2364 (1982).........................................18

*Goodnight V. Shalala,*

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

i

837 F.Supp. 1564, 1584 (1993)...................................................18

*Grant v. Sullivan,*
131 F.R.D. 436, 446 (U.S. Dist., 1990)........................................14

*Horn v. Associated Wholesaler Grocers, Inc.,*
555 F.2d 270, 275 (10th Cir. 1977)........................................…..14

*Ikonen v. Hartz Mountain Corp.,*
122 F.R.D. 258, 262 (U.S. Dist., 1988)....................................…..13

*In re Applied Micro Circuits Corp. Securities Litigation,*
2003 U.S. Dist. LEXIS 14492 at *6 (S.D. Cal. 2003)....................…..12

*In re Computer Memories Security Litigation,*
111 F.R.D. 675, 681 (N.D. Cal. 1986).......................................18

*In re Kirschner Medical Corp. Securities Litigation,*
139 F.R.D. 74, 78 (U.S. Dist., 1991)........................................14

*Miller v. Mackey International, Inc.,*
452 F.2d 424 (5th Cir. 1971).................................................12

*Siegel v. Chicken Delight, Inc.,*
271 F.Supp. 722, 724 (N.D. Cal. 1967)..................................13, 18

*Steiner v. Equimark Corp.,*
96 F.R.D. 603, 606 (1983)................................................…...12

*Stewart v. Winter,*
669 F.2d 328, 335 (5th Cir. 1982)...........................................17

*United States Trust Co. v. Executive Life Ins. Co.,*
602 F.Supp. 930 (1984).......................................................22

*Valentino v. Carter-Wallace, Inc.,*
97 F.3d 1227 (9th Cir. 1996).................................................13

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

ii

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

## State Cases

*Arias v. Superior Court,*
    46 Cal. 4th 969, 975 (2009)...............................................3, 4, 21

*Best Buy Stores, L.P. v. Superior Court*
    137 Cal.App.4th 772, 779 [40 Cal. Rptr. 3d 575]............................16

*Budget Finance Plan v. Superior Court,*
    34 Cal.App.3d 794, 799 [110 Cal. Rptr. 302]...............................16

*Calibar Bodyworks, Inc.v. Superior Court,*
    134 Cal. App. 4th 365 (Cal. App. 2d Dist. 2005).............................2

*CashCall, Inc. v. Superior Court,*
    159 Cal. App. 4th 273, 284 (Cal. App. 4th Dist. 2008)......................16

*Dunlap v. Superior Court,*
    142 Cal. App. 4th 330 (Cal. App. 2d Dist. 2006).............................2

*Pellegrino v. Robert Half Internat., Inc.,*
    181 Cal. App. 4th 713 (Cal. App. 4th Dist. 2010).............................5

*Pioneer Electronics (USA), Inc. v. Superior Court,*
    40 Cal.4th 360, 373 [53 Cal. Rptr. 3d 513, 150 P.3d 198]..............16

*Scott v. City of Indian Wells,*
    6 Cal.3d 541, 550 [99 Cal. Rptr. 745, 492 P.2d 1137]......................16

## Statutes

Business and Professions Code, Section 17200......................................3

California Labor Code, Section 201.............................................passim

California Labor Code, Section 202.............................................passim

California Labor Code, Section 203.............................................passim

California Labor Code, Section 256.............................................passim

iii

California Labor Code, Section 2699...................................................2

Other Authorities

California Division of Labor Standards and Enforcement January 9, 1999
    Opinion Letter, 1999 Cal. DLSE LEXIS 4 (Cal. DLSE 1999)...............8

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

iv

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

## INTRODUCTION

Pursuant to F.R.Civ.Pro., Rule 23(b)(3), Plaintiff CARLOS A QUEVEDO's (hereinafter, "Plaintiff") seeks certification of this class action lawsuit brought under the California Labor Code against Defendants MACY'S, INC. and MACY'S DEPARTMENT STORES, INC. (hereinafter, "Defendants") for routinely and systematically violating California Labor Code Section 201(a).[1] California Labor Code Section 201(a) requires the employer to pay the employee immediately at the time of discharge all wages earned by that employee. For each violation of Labor Code 201(a), each improperly paid employee's wages then continues until he or she is paid, for up to 30 work days as a penalty Under Labor Code Section 203[2] which has a three year statute of limitations. In addition, Labor Code Section 256 provides an additional 30 days of wages due as penalties of one year.[3] In addition to bringing this class action for up to 30 days of pages on behalf of all employees directly under Labor Code

---

[1] Labor Code Section 201 (a) states: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

[2] Labor Code 203(a) states that "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days."

[3] Labor Code 256 states: "The Labor Commissioner shall impose a civil penalty in an amount not exceeding 30 days pay as waiting time under the terms of Section 203."

Section 203, Plaintiff, who is also an aggrieved employee, is suing under the Labor Code Private Attorney General Act, Labor Code 2699, commonly known as PAGA, for an additional 30 days of penalties due under Labor Code 256. ***Dunlap v. Superior Court***, 142 Cal. App. 4th 330 (Cal. App. 2d Dist. 2006) citing ***Caliber Bodyworks, Inc. v. Superior Court***, 134 Cal. App. 4th 365 (Cal. App. 2d Dist. 2005). The statute of limitations for private actions under Labor Code 203 is three years, [4] and the statute of limitations for private actions under PAGA is one year.[5] The statute of limitations for a class action under California Business & Professions Code 17200 is four years.

Therefore, based only upon the differences in the statute of limitations and the Labor Code's different and non-exclusive penalties for failure to pay a terminated employee on time, Plaintiff seeks three sub-classes for the employees impacted by Defendant's failure to obey Labor Code Section 201(a) and Business and Professions Code Section 17200. Sub-class A, also called the "waiting penalties" or "203 class," is a three year class for violations which are actionable by the employees under Section 203(b) of the Labor Code only. Subclass B, also called the "PAGA class" is a one year subclass for additional

---

[4] Labor Code Section 203(b) states that "Suit may be filed for these penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise." The statute of limitations for violation of a statue is three years, unless otherwise specified by the statute.

[5] Generally the statute of limitations for penalties in California is one year, unless otherwise specified.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

penalties under Labor Code 256 which are actionable by way of the provisions of Labor Code Section 2699.  Sub-class C, also called the "17200 class", is a four year class for violations which are actionable under the Business and Professions Code Section 17200.  Defendant originally demurred as to this cause of action arguing Plaintiff only had a one year statute of limitations.  However, this Court denied their motion.

As stated in the First Amended Complaint, Aubclass A, which can also be called the "203" or "waiting penalties" class, is defined as:

> All persons whose employment with Macy's in California ended during the period beginning three year prior to the filing of this action and ending on the date notice of this lawsuit are mailed to the class, who were not paid their wages pursuant to Labor Code 201.

While the California Supreme Court has stated that it is unnecessary to certify a subclass for the PAGA claims[6], Plaintiff seeks certification of its Labor Code Section 256 claims brought under PAGA simply because the class members are a subset of the 203 Waiting Penalty Class, so notice would not be a significant additional burden, and the class action mechanism assures res

[6] The Court in *Arias v. Superior Court*, 46 Cal. 4th 969, 975 (2009) said: "We hold that an employee who, on behalf of himself and other employees, sues an employer under the unfair competition law (Bus. & Prof. Code §17200 et seq.) Labor Code violations must satisfy class action requirements, but that those requirements need not be met when an employee's representative action against an employer is seeking civil penalties under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.)." *Arias v. Superior Court*, 46 Cal. 4th 969, 975 (2009).

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

judicata closure for Defendant on this claim as well. [7] ***Arias v. Superior Court***, 46 Cal. 4th 969, 975 (2009). As defined in paragraph 8 of the Second Amended Complaint ¶ 8, SubClass B is defined as:

> All persons whose employment with Macy's in California ended during the period beginning one year prior to the filing of this action and ending on the date notice of this lawsuit are mailed to the class, who were not paid their wages pursuant to Labor Code 201.

Finally, Plaintiff seeks certification of subclass C for restitution under Business and Professions Code 17,200. The "17200" class is defined as:

> All persons whose employment with Macy's in California ended during the period beginning four years prior to the filing of this action and ending on the date notice of this lawsuit are mailed to the class, who were not paid their wages pursuant to Labor Code 201.

A review of the records shows that there are over 15,000 people in SubClass A and 20,000 people in SubClass C, and Plaintiff reasonably expects between 2,300 and 5,000 people in SubClass B.[8] The overriding common issue of law in this case is "were the employees paid all wages due at the time of

---

[7] If certification is denied, Plaintiff plans to continue to proceed under Labor Code 2699 on behalf of the State of California (Labor Commissioner) as representative of all the employees anyway.

[8] After litigation was filed, Defendant started to code its final paycheck into what it will probably argue were wages that were not earned at the time of termination. However, even if Plaintiff accepts Defendant's characterization, which it does not, there are over 2,300 people who show failure to pay regular wages and/or overtime at the time of termination. See Declaration of Plaintiff's expert Pannenborg filed herewith.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

termination?" The answer comes from an examination of the payroll records of Defendants showing the date the employee left the employer's employ, the reason (whether terminated or quit), and the date or dates thereafter payment of wages was made.[9]

The amount to be gained each individual is small but aggregation makes the case worth pursuing on a class wide basis only. The identity of each class member is also easily ascertainable from the employer's records. Each class member shares a common question of both law and fact with the Plaintiff, who is also a member of the class, and has the same issues to resolve regarding late payments upon termination.[10] Therefore, a class action would be superior and there is numerosity, commonality, and typicality for an ascertainable class of people. For the reasons set forth herein, the sub-classes should be certified, and if the Court does not certify the PAGA sub-class, then the PAGA claim for

---

[9] It is anticipated that Defendant will assert as a common defense that some of the wages, like commissions, were not due at the time of termination. Plaintiff will assert that since the commissions are easily calculated on the day of the termination (commissions are not paid on sales made after the employee is terminated) and further, that the policy was not to pay the hourly wages due properly. Since the penalties are a day's pay for each day the employer fails to pay in full, it is not relevant if the employer has an argument for not paying part of the money due if it can't explain the failure to pay the remainder which was due immediately. Under Labor Code Section 219, an employee can't waive his or her right to be paid immediately. *Pellegrino v. Robert Half Internat., Inc.*, 181 Cal. App. 4th 713 (Cal. App. 4th Dist. 2010).

[10] If the Court wishes, Plaintiff will seek additional class representatives for whatever further subdivisions of the class the Court feels appropriate.

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

penalties under Labor Code 256 should proceed as a representative action on behalf of the State of California (Labor Commissioner) and all the employees who were terminated within the one year statute of limitations.

## STATEMENT OF FACTS

Plaintiff was employed as a tailor by the Defendant in the State of California during the putative class period. On October 9, 2008, Plaintiff was discharged from his employment at Macy's. Although Defendant's Manual of Polices and Standard Procedures states that, in California, "Employees must be paid at the time of termination and given Notice to Employee of Change of Status and For Your Benefits pamphlet," Defendant did not issue a final paycheck to the Plaintiff until October 10, 2008 and Plaintiff did not actually receive his final check until several weeks thereafter. Plaintiff is seeking to represent similarly situated former employees of Macy's who, like Plaintiff, were not paid their final wages timely upon being discharged by Defendant.

Defendant's Manual of Policies and Standard Procedures states that, "For an associate involuntary termination, the Human Resources Manager calls HRSW to advise of name of terminating employee, date, reason for termination, last day worked and termination date." However, many terminations occur on evenings and weekends when the HRSW offices are closed. Therefore, no check is issued for these terminations at the time of discharge. Defendant also

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

fails to issue final paychecks for the full amount due. Despite there being no commissions due on sales consummated after the employee is terminated and despite the cash register being perfectly capable of computing commissions due at the end of each day, the Defendant prefers to wait until the next regular pay cycle to pay any commissions earned to an employee before termination. However, in reality, the check is not held for the charge back period but merely held for the next pay roll period indicative of administrative convenience rather than practical necessity. Nor does this practice excuse the non-payment of non-commissioned wages which are clearly due at the time of discharge, as stated in the California Division of Labor Standards Enforcement January 9, 1999 opinion letter, 1999 Cal. DLSE LEXIS 4 (Cal. DLSE 1999):

> In the event that commissions have been "earned" on or before the date of an employee's termination, the employer must complete the necessary calculations and pay the commissions on the date of the termination in the case of a discharge or a voluntary quit with more than 72 hours prior notice, or within 72 hours of the termination in the case of a voluntary quit without such prior notice. It is not permissible to wait until the customary time for calculating the commissions of current employees, nor is it permissible to delay payment of such earned commissions until the next regularly scheduled payday(s).

Based upon a review of Defendants' records, Plaintiff estimates that there are over 15,000 employees who were terminated or discharged by Defendant, within the three years prior to the filing of this Complaint, who did not receive

their final pay in the time proscribed by Labor Code 201(a).[11] There are 20,000 such people within the four year period and there are between 2300 and 5000 people in the one year period depending on whether the court accepts Defendant's belated attempt to reclassify payments as not earned at the time of payment after termination.[12] As concluded by Plaintiffs' expert based upon preliminary data supplied by Defendants:

| Final Checks Issued* | Based On | Last Day Worked | Termination date | Effective Date of Termination | Last Day Worked REG and OT Only |
|---|---|---|---|---|---|
| Checks issued after termination | >0 | 5486 | 4341 | 2326 | 2348 |
| Check before termination | <0 | 954 | 1983 | 4595 | 659 |
| Check issued on termination date | =0 | 3145 | 3261 | 2738 | 1279 |
| No termination date provided | | 74 | 74 | 0 | |
| | Total | 9659 | 9659 | 9659 | 4286 |
| Mean difference in days between final check and termination where check is after | | 12.10 | 9.99 | 20.48 | 7.09 |

*In cases where the final check is for $0 or less, if the preceding check date is after the termination date, the preceding check is compared to the termination date.

---

[11] Shortly after the Plaintiff filed this lawsuit, Defendant started using numerous codes in attempt to distinguish between earned and unearned wages at the time of termination. While Plaintiff disputes this categorization, even under the acceptance of this notion that all codes used other than "REG" and "OT" were somehow not earned at the time of termination, there are still 2,348 payments made after termination dates, with the average being seven days after termination.

[12] Because this system was not in place before the filing of the lawsuit, projections for the three and four year class are based on total number of "late checks" regardless of the nature of the payments. However, calculating the number of people in the class using the lower figure over a three year period would amount to approximately 7,044 payments made after termination dates, and over 9,000 "late payments" in a four year period.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

- Comparing the final check dates to "last day worked", regardless of which measurement is used, there are a substantial number of final payments after termination.
- Regarding the classification of payments as applicable per statute, again the point is moot. Restricting the summary to just payments including ordinary pay (REG or OT) for example, there are still 2,348 payments after termination date and an average of 7 days past (using "last day worked" in this case).

In a February 11, 2010 deposition of the person most knowledgeable of PeopleSoft and the data it stores, Dyna Marie Sparks, Defendant's Director of PeopleSoft Development and Support, stated Defendant maintains termination data on a software program called PeopleSoft . Videoconference Deposition of Dyna Sparks. Pg 32, Ln 1.  PeopleSoft is a Human Resources and Benefits software program Defendant uses to produce its paychecks, pay advises, W2s, and it maintains its employee benefit information.  PMK Sparks confirmed that the Defendant's implementation of the PeopleSoft data base contains a field labeled "Effective Date of Termination" which contains a date which must be manually entered into the system.[13] Deposition of Ms. Sparks, Pg. 39, Lns 8-12. Whether on the computer or in the personnel files, the records of Defendant

---

[13] PMK Sparks also reported that Defendant version of PeopleSoft stores a "Termination Date" which is an automatic entry that is simply determined by subtracting one day from the manually entered "Effective Date of Termination." PMK Sparks could not explain the reason for shorting the employee one day to make the termination retroactive one day from the "Effective Date of Termination."

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

should state if the employee was terminated or quit, and therefore, disclose as a non-discretionary matter whether Labor Code 201(a).[14]

Defendants' version of PeopleSoft does not contain information regarding the actual date a terminated employee physically obtained his or her final check beyond the date the check was issued. Plaintiff's expert analysis of Defendants payroll records, show that, for one year, Defendants have failed to pay final wages within the statutory period to over 5,000 people, over a period of three years, who were issued checks after their termination date, with the average employee waiting 11 days from the time of termination to check issuance date,

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

[14] Labor Code 201(a) applies unless the Defendants can meet their burden of proving that Defendants are entitled to the 72 hour grace period of Labor Code 202(a). As stated by the United States Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 (U.S. 1946): "When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result is only approximate. See Note, 43 Col. L. Rev. 355.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

not including time that the final check was held by Defendant and not delivered, as was the case with Plaintiff himself.  If the average employee earns only 15 dollars an hour, this amounts to over $18,000,000 in the aggregate for penalties owed to the three year 203 Class,  not including an additional one third (over $6 Million dollars) in Labor Code 256 penalties for the one year PAGA class. The restitution amount for the fourth year could be the same six million dollars, but even just a reasonable interest rate applied to the late payments amount would be significant.[15]

## ARGUMENT

### I.   PLAINTIFF IS NOT REQUIRED TO ESTABLISH THAT HE WILL PREVAIL ON THE MERITS OF HIS CLAIMS

It is well settled that any examination of the merits of a claim is inappropriate in the context of a motion for class certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S.Ct. 2140 (1974).  In *Eisen*, the United States Supreme Court explained that "nothing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." (*Eisen, supra*, 417 U.S. at p. 177.)  Defendant cannot argue the

---

[15] For any one person, 11 days of pay at 15 dollars per hour for 8 hours a day, is only $ 3,960 for a 3 year period, hardly enough to interest any lawyer in taking the case on a contingency basis. But in the aggregate, using a class action would be a significant inducement for a lawyer to pursue the action, making class action a superior method of proceeding.

merits of the claims in order to challenge the appropriateness of the class. *Baldwin & Flynn* 149 F.R.D. 598, 601 (1993); *Steiner v. Equimark Corp.* 96 F.R.D. 603, 606 (1983); *Andersen v. City of Albuquerque*, 690 F2d 796, 799 (10th Cir. 1982). In *Miller v. Mackey International, Inc.* 452 F.2d 424 (5th Cir. 1971), the Fifth Circuit specifically held that a trial court could not consider the substantive merits of a claim for relief when passing on a motion for a class action. "In determining the propriety of a class action, the question is not whether the Plaintiff or Plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' "(*Eisen, supra*, 417 U.S. at p. 178, quoting *Miller, supra*, 452 F.2d at p. 427.) Subsequent federal decisions have interpreted *Eisen's* broad language as barring merit-based inquiries in the class certification process.  See, e.g., *Valentino v. Carter-Wallace, Inc.* 97 F.3d 1227 (9th Cir. 1996).  In ruling on a motion for class certification, the district court must accept the substantive allegations of the complaint as true.  *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975); *In re Applied Micro Circuits Corp. Securities Litigation*, 2003 U.S. Dist. LEXIS 14492 at *6 (S.D. Cal. 2003).

## II.    PLAINTIFF MEETS EACH OF THE PREREQUISITES OF F.R.CIV.PRO RULE 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure sets out four initial prerequisites for class action treatment:

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

A.    The Class Is So Numerous That Joinder Of All Members Is Impracticable

The Complaint herein alleges that the number of class members "is so numerous that joinder of each member of the class is impractical. SubClass A, the three year class under Labor Code 203, consists of at least 15000 people, and maybe more. SubClass B is estimated to be approximately one third of SubClass A, consisting of more than 4,800 former employees who terminated employment within a year of the filing of this complaint and were not paid within the time limits of Labor Code Sections 201(a). SubClass C comprises of about 20,000 people. Even using Defendant's most recent "disaggregation" method of excluding everything from non-paid earned wages except regular wages and overtime, the class B is well over 7,000 people, SubClass A over 2,300 people, and subclass C over 9,000 people. This far exceeds any reasonable class certification requirements for numerosity. *Buttino v. FBI,* 1992 U.S. Dist. LEXIS 21919 (N.D.Cal. 1992) (Judge Armstrong certified class of 34 known participants on grounds joinder would be impractical), *Siegel v. Chicken Delight, Inc.*, 271 F.Supp. 722, 724 (N.D. Cal. 1967). See, *Ikonen v. Hartz Mountain Corp.*, 122

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.com

F.R.D. 258, 262 (U.S. Dist., 1988); see also, *In re Kirschner Medical Corp. Securities Litigation*, 139 F.R.D. 74, 78 (U.S. Dist., 1991) (class size of 25 to 30 members raises presumption that joinder would be impracticable). *Grant v. Sullivan*, 131 F.R.D. 436, 446 (U.S. Dist., 1990).. *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 662 (U.S. Dist., 1996). See *Horn v. Associated Wholesaler Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (applying a liberal interpretation of the Rule 23(a) requirements, and referring to *Davy v. Sullivan*, 354 F.Supp. 1320 (1973), in which a 10-member class was upheld).

B.    Common Questions of Law and Fact Apply To Each Sub Class

The predominating questions in this action are primarily ones of law and they are common among the proposed class members.  These questions include whether the class members who were terminated by the employer were paid their final paycheck immediately as required by Labor Code 201(a).  It is the employer's burden to keep records concerning terminated employees.  This would simply reduce damages in the aggregate from $19.8 Million for the 203 class and $6.6 Million for the PAGA class to $14.4 Million for the 203 class and $4.8 Million for the PAGA class.   Differences in damages are not a reason to deny certification.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

Plaintiff anticipates Defendants will likely argue the payments are delayed for reasons not experienced by the named class representative, namely that commission payments were delayed and the named Plaintiff did not work on commission. First, this would not significantly reduce the number of members of the class because all the employees who were commissioned also received a base salary or hourly amount which was not paid to them at the time of termination. The statute requires a day's pay for every day that even a single dollar is earned but unpaid after the employee is discharged. So it doesn't matter if the Defendant has an excuse for some of the wages being delayed; if the employer has no excuse for the remainder of the wages being delayed, the penalties are the same. The burden is on the Defendant to show the delay in payment was justified. Therefore, the class representative need not be a commissioned salesperson to represent the vast majority of commissioned employees who were also paid their base rate late.

Second, there is no legitimate reason to delay payment of commissions to the next pay period. This is only done for the convenience of the employer, since employees do not earn commission after termination and commissions can be calculated immediately upon the end of the day of termination. In this case, the overwhelming majority of all purchases are of consumer items in stock—cash (or credit card) and carry. And the cash registers (point of sale computers)

report each sale and the sales person responsible at the time of purchase, and can be (and are for other purposes) uploaded daily.

Third, if the class representative is not typical of this subgroup then the court should allow Plaintiff's the names and addresses of all those who would likely be appropriate class representatives so Plaintiffs may search for additional representatives for each excuse the Defendant tries to proffer. As stated in *CashCall, Inc. v. Superior Court*, 159 Cal. App. 4th 273, 284 (Cal. App. 4th Dist. 2008):

> Should the [trial] court conclude that the named plaintiffs may not adequately represent the class, it should afford them an opportunity to amend their complaint to redefine the class or to add new individual plaintiffs. [Citations.]" (*Scott v. City of Indian Wells* (1972) 6 Cal.3d 541, 550 [99 Cal. Rptr. 745, 492 P.2d 1137].) Because a named plaintiff may not adequately represent the class and may need to amend the complaint to add a new individual plaintiff who will adequately represent the class, precertification "[d]iscovery to ascertain a suitable class representative is proper. [Citation.]" (*Best Buy Stores, L.P. v. Superior Court* (2006) 137 Cal.App.4th 772, 779 [40 Cal. Rptr. 3d 575], citing *Budget Finance Plan v. Superior Court* (1973) 34 Cal. App. 3d 794, 799 [110 Cal. Rptr. 302] ["[I]f discovery is necessary in order to [afford a named plaintiff an opportunity to add new individual plaintiffs who adequately represent the class], it should be made available."].) The California Supreme Court recently stated: "Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case. [Citations.]" (*Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360, 373 [53 Cal. Rptr. 3d 513, 150 P.3d 198].)"

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

In fact, this is really a single issue complaint—was the payment of wages to employees made at the appropriate time relative to the employee's separation from employment. Plaintiff is only required to show that there is at least one issue whose resolution would affect a significant number of putative class members. *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982). (See also, *Aiken v. Obledo*, 442 F. Supp. 628, 658 (1977) where a single common issue was identified as meeting the commonality requirement.) Here, the issue is late payment after termination or discharge. All other issues are subsidiary. The penalties under Labor Code 203 are automatic and non-discretionary. The penalties under Labor Code 256 as applied through Labor Code Section 2699 are a little more flexible if the Defendant can show good cause, but since the Defendant's own policy says it must pay immediately upon termination, and it obviously does not, there is little doubt that the Defendant was simply grossly negligent or willful in disobeying the law. In any event, the conduct at issue is the conduct of the Defendant as applied to the entire class of former employees.

C.   The Representative Party Will Fairly and Adequately Protect the Interests of the Class

The remaining requirement under Rule 23 (a) is that the class representative be able to protect the interests of the class fairly and adequately. This requirement is met if the named Plaintiff does not have interests that are antagonistic to those of the class, and if the named Plaintiff's attorneys' are qualified to conduct the

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

litigation as a class action. *In re Computer Memories Security Litigation*, 111 F.R.D. 675, 681 (N.D. Cal. 1986). See also *Siegel v. Chicken Delight, Inc., supra; Goodnight v. Shalala*, 837 F.Supp. 1564, 1584 (1993).

As demonstrated above, the interests of the representative Plaintiff are fully congruent with the interests of the class. Where the representative possesses the same interest and has suffered the same injury as other members of the class, they will generally be considered to be able to represent the class fairly and adequately. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364 (1982).

Defendant may argue Plaintiff may have a different amount of damages due to him but it is well established that the need to assess damages individually does not preclude class treatment when common issues as to liability predominate. *Bogosian v. Gulf Oil Corp*. 561 F.2d 434, 456 (3rd Cir. 1977). Defendant may argue the named representative is not typical of those who were solely delayed because of the commissions coming due at a later date. But, not only is there no reason for the delay in payment of commissions, most of the people who were delayed in the payment of their commissions, were also delayed in the payment of their hourly wages or base salary. Further, the typicality requirement of Rule 23 (a)(3) demands only that the "essence" of liability allegations be similar among class members; dissimilarities in individual members' claims will not defeat certification. *Steiner*, supra 96 F.R.D. at 609.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

As to the qualifications of Plaintiff's counsel, the accompanying

Declaration of Mark R. Thierman sets forth the experience of Plaintiff's counsel

in employment-related matters, in class actions and in complex civil litigation.

It is respectfully submitted that these qualifications are sufficient to satisfy the

Court that the interests of the class members will be fairly and competently

represented by plaintiff's counsel. All of the requirements of Rule 23 (a) for

maintaining this action as a class action are thus easily fulfilled.

## III.   **PLAINTIFF ALSO MEETS THE REQUIREMENTS OF RULE 23(b)**

Rule 23(b) provides in relevant part that a class action may be maintained if

the requirements of Rule 23(a) are met <u>and</u> if:

> "(1) the prosecution of separate actions by or against individual members of the class would create a risk of
> "(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> "(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their abilities to protect their interests; or
> "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
> "(3) the court finds that the questions of law or fact common to the members of the class predominate over

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

> any questions affecting only individual members, and
> that a class action is superior to other available methods
> for the fair and efficient adjudication of the
> controversy."

The statutory requirements are met in the instant case, as discussed below.

### A.  This Action Could Properly Be Brought Under Rule 23(b)(3)

Because the major issue in this case is damages at the statutory rate, this action could surely be certified under F.R.Civ.Pro Rule 23(b)(3). F.R.Civ.Pro Rule 23(b)(3) authorizes class certification where the four 23(a) prerequisites are met plus two additional requirements are satisfied. The two 23(b) requirements are "predominance" and "superiority": Common questions must predominate over any questions affecting only individual members and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2246 (1997). As shown above, common issues of fact and law certainly predominate over individual ones. By comparing the "termination date" with the last "check issue" date on Defendant's own records Plaintiff has made a prima facie case of violation of Labor Code section 201. Whether it is a violation of Labor 201(a) can be determined by reference to the notes in the personnel file which Defendant has the burden of maintaining. The reason that some part of the payments are late is irrelevant if other parts are also late and is

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

merely a matter of defense applicable to an entire sub-subclass rather than individual proof. If the Court wants to have a commissioned representative, then under California law which holds there is no privacy rights to not have names and addresses submitted to discovery, Plaintiff should be allowed to seek additional class representatives. In addition, the individual has only a few hundred dollars at stake, while the class is owed millions in the aggregate. It would be unjust to allow Defendants to escape justice because they took a little from a lot of people, rather than taking a lot from a few. Thus, it cannot be denied that a single class action is far preferable to the multiplicity of actions that would result if this class were not certified. The purpose of the class action device is to aggregate claims that may not be worth pursuing individually. *Eisen*, supra.[16]

B. The Prosecution of Separate Actions by Individual Members Would Create a Risk of Inconsistent Adjudications

The circumstances presented by the instant case are precisely the kind for which class treatment is most appropriate. Rule 23(b)(1)(A) is designed to avoid the situation where numerous Plaintiffs file separate actions over the same

---

[16] Under California law, class certification is not necessary for Plaintiff to represent the interests of all employees terminated without proper payment in the PAGA class. *Arias v. Superior Court*, 46 Cal. 4th 969, 975 (2009). Because all the members of the PAGA class are by definition members of the 203 class, there is little extra expense to notice to the class, nor is there any reason not to certify the class. Plaintiff seek certification to preclude any argument that judgment of these claims are not res judicata in subsequent litigation.

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

set of facts and obtain different resolutions of common factual and legal issues.
That undesirable result is almost certain to occur if the individual class members
were to file separate actions in the present matter.

If over 15,000 actions were filed over defendants' company-wide practices
at issue in this matter, it is extremely likely that, somewhere along the line, such
parties would obtain differing resolutions of the critical legal and factual issues
that the cases all share, as discussed above. If that result did occur, Defendants
would be faced with inconsistent standards governing the propriety of its conduct
in paying all wages due to the members of the class at the time of their termination
of employment. It is just such a situation that Rule 23(b)(1)(A) seeks to avoid by
authorizing the maintenance of a class action. See, e.g., ***United States Trust Co. v.
Executive Life Ins. Co.,*** 602 F.Supp. 930 (1984), upholding class treatment in an
action by beneficiaries against fiduciary for breach of trust.

C. The Prosecution of Separate Actions by Individual Members Would Create A Risk of Individual Adjudications That Are Dispositive of the Interests of Other Members Not Party To the Adjudications

Rule 23(b)(1)(B) authorizes the use of the class action in situations where an
individual adjudication, while technically not conclusive of the rights of other
similarly situated individuals, is likely to be dispositive of those rights as a
practical matter. See, Notes of Advisory Committee on 1966 Amendments to
Federal Rules of Civil Procedure, Rule 23. The present case is again a classic

situation demonstrating the applicability of the rule. The same reasoning that makes Rule 23(b)(1)(A) applicable to the facts of the present situation also makes Rule 23(b)(1)(B) applicable.  If this action does not proceed as a class action, it is certain that many individual actions would be brought on behalf of the at least 115,902 individuals who make up the proposed subclasses.  An order or judgment in any one of those actions will establish a rule that will apply in subsequent actions and, although the ruling in one case would not operate as *res judicata* against another individual plaintiff, it would, as a practical matter, have a determinative effect on the rights of the latter.   In order to preclude such a situation, Rule 23(b)(1)(B) authorizes the maintenance of such an action as a class action.

D. <u>The Party Opposing the Class Has Acted On Grounds Generally Applicable To the Class</u>

The present matter could be maintained as a class action under either subdivision (A) or subdivision (B) of Rule 23(b)(1).  It could also be maintained as a class action under Rule 23(b)(2).  This case constitutes a textbook example of circumstances appropriate for class action treatment.  This entire litigation revolves around Defendants' practices of delaying payment of wages upon termination of employment and the defenses are applicable to the entire class. Plaintiff submits it has made a prima facie case of violation of Labor Code Section 201 just by comparing the "termination date" with the last "check issue" date on

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

Defendant's own records.  The burden now shifts to Defendants to show the late payment was for money not earned at the time of termination.  Defendants' justifications will apply to the entire class or large subgroups within the class and can be handled as sub-issues from records.[17]

## CONCLUSION

Based on the foregoing, Plaintiff requests an order by the Court certifying SubClass A, SubClass B, SubClass C or such other class descriptions as the Court feels just and proper. If certification is denied, Plaintiff requests an order allowing it to proceed under Labor Code 2699 on behalf of the State of California (Labor Commissioner) as representative of all the employees within the PAGA class.

Dated February 16, 2010          RESPECTFULLY SUBMITTED:

**LAW OFFICES OF SHAUN SETAREH
THIERMAN LAW FIRM**

By:  ___//s//Mark R. Thierman___

___

[17] Only since the filing of this lawsuit did Defendants start characterizing its failure to pay wages due at the time of discharge into categories that it could argue were not really due.  Not only is this an admission of past wrong-doing, it leaves most of the people within the class period as having wages earned and unpaid at the time of termination.