LINK: 44

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | March 9, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None | None | |

**Proceedings:**     (In Chambers)

**ORDER RE: PLAINTIFF'S MOTION TO CERTIFY CLASS**

**I. INTRODUCTION**

Plaintiff Carlos Quevedo ("Quevedo" or "Plaintiff") brought this putative class action against Macy's, Inc., and Macy's Department Stores, Inc. (collectively, "Macy's" or "Defendants") seeking redress for Macy's failure to timely pay all wages owed upon termination as required by California Labor Code sections 201 and 202. (See generally Docket No. 23, Second Am. Compl. ("SAC").) On behalf of himself and other former employees who "were not paid their final wages timely upon separation of employment," Quevedo asserts three causes of action. (Id. ¶¶ 4, 12–33.) Specifically, Quevedo asserts a claim for waiting time penalties under Labor Code section 203 for violations of sections 201 and 202, a claim under California's Unfair Competition Law ("UCL"), and a claim for civil penalties pursuant to Labor Code section 2699. (Id. ¶¶ 12–33.) The Court previously dismissed Quevedo's claims to the extent they relied on alleged section 202 violations based on a failure to timely pay final wages to employees who had resigned. (Docket No. 30, 7/6/09 Order.) Quevedo has since abandoned his UCL claim in light of the California Supreme Court's recent decision in Pineda v. Bank of America, 241 P.3d 870 (Cal. 2010). (Docket No. 50, Joint Status Report at 3.) Presently before the Court is Plaintiff's motion for class certification. (Docket No. 44.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | March 9, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

## II. FACTS

### A. PLAINTIFF'S ALLEGATIONS

Quevedo alleges that Macy's did not give him his final paycheck when he was discharged from employment on October 9, 2008. (Id. ¶ 3.) Rather, Macy's issued the check on October 10, 2008, and he received the check several weeks later. (Id.) Quevedo's complaint explains that California Labor Code section 201 provides that, if an employee is terminated, the employer must pay all unpaid wages on the day of termination. (Id. ¶ 14.) Quevedo contends that Macy's "maintained a policy or practice of not providing employees their full and final paychecks within the time frame[] required by [section 201]." (Id. ¶ 16.)

### B. THE STATUTORY PROVISIONS

Under California Labor Code section 201, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Labor Code § 201(a). Section 203 provides for so-called "waiting time penalties" for a violation of section 201. Specifically, section 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Section[] 201 . . . , any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Id. § 203(a). Section 203 further provides, however, that "[a]n employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment when fully tendered to him or her, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which he or she so avoids payment." Id.

Labor Code section 2699, the Private Attorney General Act ("PAGA"), provides a second way of recovering for section 201 violations. Under section 2699:

> any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action

LINK: 44

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | March 9, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

      brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3.

Id. § 2699(a). This section establishes a civil penalty for violations of Labor Code provisions that, like section 201, do not specifically provide for a civil penalty: for employers with one or more employees at the time of the violation, "the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Id. § 2699(f).

      Quevedo seeks both statutory penalties under section 203 and civil penalties under section 2699.

**C. THE PROPOSED CLASSES**

      Although Plaintiff initially sought certification of three sub-classes, he has since withdrawn his request for certification of a UCL sub-class because the California Supreme Court's decision in Pineda v. Bank of America, 241 P.3d 870 (2010), precludes recovery of waiting time penalties under the UCL. (Docket No. 50, Joint Status Report at 3.) Plaintiff now seeks certification of two sub-classes. The sub-classes have identical definitions apart from the periods of time they cover. First, Plaintiff seeks certification of Subclass A, defined as:

> All persons whose employment with Macy's in California ended during the period beginning three years prior to the filing of this action and ending on the date notice of this lawsuit are [sic] mailed to the class, who were not paid their wages pursuant to Labor Code 201.

(Mem. at 3.) For this sub-class, Plaintiff seeks recovery of waiting time penalties under section 203, which he contends has a three-year statute of limitations. (Mem. at 1).

      Second, Plaintiff seeks certification of Subclass B, defined as:

> All persons whose employment with Macy's in California ended during the period beginning one year prior to the filing of this action and ending on the date notice of this lawsuit are [sic] mailed to the class, who were not paid their wages pursuant to Labor Code 201.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | March 9, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

(Mem. at 4.) For this sub-class, Plaintiff seeks recovery of penalties under Labor Code section 2699, which has a one-year statute of limitations. (Mem. at 2.)

### D. PLAINTIFF'S EVIDENCE OF UNTIMELY PAYMENTS OF FINAL WAGES

In support of his motion for class certification, Quevedo submits the declaration of an expert who analyzed data in Macy's "PeopleSoft" database. (Declaration of Glenn Pannenborg ("Pannenborg Decl.").) The expert report analyzes an extract of data relating to Macy's non-commissioned hourly store associates from December 9, 2007 forward." (Id. ¶ 5.) The expert's report shows that Macy's issued 5486 checks after an employee's "last day worked," 4341 checks after an employee's "termination date," and 2326 checks after an employee's "effective date of termination."[1] (Id., Ex. 2.) In addition, if only checks including regular and overtime pay are considered, Macy's issued 2348 checks after an employee's "last day worked."[2] (Id.) Finally, 5183 checks including all types of payments except severance payments were issued after an employee's "last day worked." (Supp. Pannenborg Decl., Ex. A.)

Evidence submitted by Macy's provides more detail on the PeopleSoft data on which Plaintiff's expert's calculations are based. The data is based on an extract from the PeopleSoft database of records from December 9, 2007, through November 17, 2009.[3] (Declaration of Julie Avins ("Avins Decl.") ¶ 30.) The data shows, among other things, (1) an effective date of termination, (2) a termination code, (3) a termination description, (4) the last day worked, (5) the termination date, (6) the check date, (7) the amount and form of payment, and (8) an earnings code. (Id., Ex. D [Spreadsheet].)

The effective date of termination is a termination date that a Human Resources Manager and supervisor decide upon. (See Declaration of Mark R. Thierman ("Thierman Decl."), Ex. A at 212.) The "termination date" is automatically calculated by the PeopleSoft software. (Id., Ex. B [Deposition of Dyna Marie Sparks] at 39.) The "termination date" is generally one day before the "effective termination date." (See Avins Decl., Ex. D.) If an employee is terminated

---

[1] A supplemental declaration by Plaintiff's expert reports these numbers as 5458, 4221, and 2188, respectively. (Supplemental Pannenborg Decl., Ex. A.) These revised figures apparently exclude payments coded as "severance." (See id. ¶ 5.)

[2] The supplemental declaration reports this figure as 2427. (Supp. Pannenborg Decl., Ex. A.)

[3] The record does not specify, but the Court assumes this refers to dates of termination, effective termination dates, or last days worked from December 9, 2007.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | March 9, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

because he is an on-call employee who has not worked in the last 90 days, his "termination" date is the last day he worked. (Thierman Decl., Ex. A at 212.) An employee suspended during a loss prevention investigation might have been coded as terminating on the date of suspension, as opposed to the date of the later termination interview at which the termination decision was actually made. (Avins Decl. ¶ 42.) Seasonal employees' termination dates may have been coded as terminating on a date before that reflected in their "Notice to Employee of Change in Employment Status." (Id.)

The "last day worked" may or may not reflect the last day for which the employee was paid. (Id. ¶ 41.) For example, an employee scheduled to return to the store for a termination interview would be paid for the termination interview. (Id.) The "last day worked," however, might reflect his last day of regular work. (See id.)

The "termination code" reflects the reason for termination. However, Defendants maintain that this does not always accurately reflect whether an employee was involuntarily terminated. (Id. ¶ 40.) For example, when an employee subject to a loss prevention investigation refused to return to the store following the investigation, his termination might be coded as involuntary, when he in fact voluntarily abandoned his employment. (Id.)

The record is not entirely clear on how the date of final payment is determined. The spreadsheet and accompanying declaration explain that the data extract "sets forth the last five checks/vouchers (other than zero dollar checks) issued to an identified employee." (Id. ¶ 35 & Ex. D n.6.) The spreadsheet, however, lists only one "check date," one "gross amount," one "net amount," and one "check number." (See id., Ex. D.) Presumably, this is the last of the five final checks extracted. For employees who were terminated more than once, the last five checks were identified "by going 21 days ahead of the 'Effective Date of Termination' and working backwards from that date to pull the last five checks/vouchers.'" (Id., Ex. D n.6.) According to Defendant's declaration, an employee's final pay is sometimes comprised of more than one check and/or voucher. (Id. ¶ 36.) In addition, it is common for employees to be involuntarily terminated more than once. (Id. ¶ 38.) Seasonal employees, for example, may be re-hired within days of termination. (Id.) Thus, payments reflected in the data extract could "actually constitute an employee's 'first' payment affiliated with the employee's re-hire status rather than a 'late' payment." (Id.)

**E. MACY'S EVIDENCE OF FINAL PAYMENT PROCEDURES**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | March 9, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

Macy's explains that it has three different methods of paying its employees: (1) "on-cycle" checks cut in connection with the regular pay cycle, (2) "off-cycle" checks cut outside of the regular pay cycle, and (3) vouchers issued at the store which can be immediately cashed at the store. (Id. ¶ 12.)

Macy's pay period runs Sunday through Saturday for hourly store associates. (Id. ¶ 14.) The payroll department processes "on-cycle" checks on the Monday following a pay period and overnights those checks—and direct deposit "advices"— to the store on Tuesday. (Id. ¶ 15.) Thus, these checks and advices are available in the store on Wednesday, or Thursday at the latest. (Id.) Friday is payday. (Id.) On-cycle paychecks that are direct deposited are generally available for withdrawal on Thursday. (Id. ¶ 16.) These checks cannot be cancelled after Tuesday morning. (Id.)

"Off-cycle" checks are those checks cut outside the regular payroll cycle. (Id. ¶ 17.) Such checks are generally issued only on Thursdays. (Id.) According to Macy's, an employee's final pay could be comprised in part by an off-cycle check. (Id. ¶ 18.)

Vouchers are a form of payment that can be cashed at any Macy's store. (Id. ¶ 19.) To get a voucher, the store contacts HR Services, which can usually process a voucher within the hour. (Id. ¶ 20.) HR Services makes the voucher available electronically via a link on the intranet. (Id. ¶ 21.) The store HR administrator clicks on the link, prints out the voucher, and logs it onto a paper log in the store. (Id.) A senior manager must then sign the voucher to authorize payment. (Id. ¶ 22.) The HR administrator then brings the voucher to the gift wrap department, which cashes the voucher for the employee. (Id. ¶¶ 22–23.) If an employee does not pick up a voucher after three weeks, the voucher is voided and a check is sent to the employee's home instead. (Id. ¶ 23.)

### III. DISCUSSION

**A. STANDARD FOR CLASS CERTIFICATION**

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect the rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983)). The Federal Rules of Civil Procedure authorize class action litigation where Rule 23's requirements are met. An implied prerequisite to certification is that the classes must be sufficiently definite and ascertainable to permit meaningful notice to be given. See William Schwarzer et al., Federal Civil Procedure

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | March 9, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

Before Trial § 10:432 (2006). Because the Court concludes that Plaintiff cannot obtain class certification because his class is not ascertainable, the Court does not describe or address Rule 23's requirements.

**B. ASCERTAINABILITY**

    **1. LEGAL STANDARD**

"A class definition should be 'precise, objective, and presently ascertainable,'" but need not be "'so ascertainable that every potential member can be identified at the commencement of the action.'" O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998) (quoting Manual for Complex Litigation § 30.14 (3d ed. 1995) and 71 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure: Civil 2d § 1760 (1986)). So long as it is "administratively feasible for the court to ascertain whether an individual is a member," a class is sufficiently ascertainable. Id. "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." Hanni v. Am. Airlines, Inc., No. 2010WL 289297, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010) (internal quotations omitted). "[I]f a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class," the class is not sufficiently ascertainable. Id.; see also Heffelfinger v. Elec. Data Sys. Corp., No. 07-00101, 2008 WL 8128621, at *5 (C.D. Cal. Jan. 7, 2008) ("Where a decision on the merits of a person's claim is needed to determine whether a person is a member of a class, the proposed class action is unmanageable virtually by definition." (internal quotations and ellipsis omitted)).

    **2. APPLICATION**

The Court concludes that Quevedo's proposed classes are not ascertainable because the Court would have to make a determination on the merits—whether an employee was "not paid [his] wages pursuant to Labor Code 201"—to determine class membership. Plaintiff suggests that this class is readily ascertainable because the PeopleSoft database and other Macy's records objectively show whether an employee was paid on his date of termination or not until later. This data alone, however, cannot show that an employee was "not paid [his] wages pursuant to Labor Code 201."

First, section 201 provides only that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Labor Code § 201(a). The employer does not violate this provision unless the employee "perform[s] his or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | March 9, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

her duty to be at the store to receive tender of final pay or to give [the employer] specific mailing instructions."  In re Wal-Mart Stores, Inc. Wage & Hour Litig., No. 06-2069, 2008 WL 413749, at *8 (N.D. Cal. Feb. 13, 2008).  Thus, if an employee did not make himself available to receive final payment, Macy's did not violate section 201 by failing to pay the employee immediately upon termination.  Section 203 similarly provides that no waiting time penalties will be available to "[a]n employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment when fully tendered to him or her."  Cal. Labor Code § 203(a).  Plaintiff does not refute Macy's evidence that "PeopleSoft does not indicate whether an employee made himself or herself available at the store to accept tender of his or her final pay."  (Declaration of Julie Avins ("Avins Decl.") ¶ 33.)  Rather, Plaintiff suggests that "the remainder of Defendant's records . . . contain sufficient information to determine the earliest time at which those wages theoretically could have been tendered to separated employees."  (Reply at 16.)  This contention fails to identify what records make it readily ascertainable which employees made themselves available to accept final payment such that the failure to pay final wages upon termination violated section 201.

Because the records do not reveal whether an employee made himself available to receive final payment, the proposed sub-classes are not ascertainable.  The Court denies class certification on this basis.  In In re Wal-Mart Stores, Inc. Wage & Hour Litigation, the court declined to certify a waiting penalties class for similar reasons.  There, the employer's electronic database did not reflect "when associates made themselves available for tender of their final pay."  Id., 2010 WL 413749, at *9.  The court found this "obstacle . . . simply insurmountable" and declined to certify a sub-class seeking waiting time penalties.  Id.  This Court similarly finds that the PeopleSoft data's silence on whether Macy's employees made themselves available to receive their final pay precludes certification of Plaintiff's proposed classes.

Second, Plaintiff's definition of the proposed sub-classes seeks to certify an impermissible "fail-safe" class.  See Heffelfinger, 2008 WL 8128621, at *10.  A "fail-safe" class is a class defined in terms of people who suffered a violation of law.  See id.  Here, Plaintiff defines the classes as those employees "who were not paid their wages pursuant to Labor Code 201."  This amounts to a class of people who were not paid their wages in violation of Labor Code section 201.  Such a class is impermissible because its "members would be 'bound only by a judgment favorable to plaintiffs but not by an adverse judgment.'"  Id. (quoting Adadhunas v. Negley, 626 F.2d 600, 604 (7th Cir. 1980)).  In other words, because the proposed class would include only those employees who were not timely paid their final wages under section 201, a jury determination that Macy's timely paid final wages as required by section 201 would at the same time determine that there was no class.  Id. (citing Dafforn v. Rousseau Assocs., Inc. 1976-2 Trade Cas. (CCH), 1976 WL 1358, *1 (N.D. Ind. July 27, 1976)).  As a result, "class members

LINK: 44

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | March 9, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

either win or are not in the class." Id. (quoting Genenbacher v. CenturyTel Fiber Co. II, 244 F.R.D. 485, 488 (C.D. Ill. 2007)). For the independent reason that Plaintiff's proposed sub-classes constitute such impermissible "fail-safe" classes against which no adverse judgment could be entered, the Court denies certification.

### C. PLAINTIFF'S SECTION 2699 CLAIM

Plaintiff requests that, if the Court denies certification, it issue an "order allowing [him] to proceed under Labor Code 2699 on behalf of the State of California (Labor Commissioner) as representative of all the employees within the PAGA class." (Reply at 25.) Plaintiff does not need such an order. California law is clear that an employee bringing suit under Labor Code section 2699 as a private attorney general need not obtain class certification. Arias v. Superior Court, 209 P.3d 923, 929–34 (Cal. 2009); accord Cardenas v. McLane Foodservice, Inc., No. 10-473, 2011 WL 379413, at *3 (C.D. Cal. Jan. 31, 2011). Nothing bars Plaintiff from proceeding with his complaint, which contains a claim under section 2699.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for class certification. Although the Court has the authority to redefine proposed classes, see Armstrong v. Davis, 275 F.3d 849 n.28 (9th Cir. 2001), it declines to do so here. Plaintiff has not offered an alternative class definition, and no alternative definition of an ascertainable class is readily apparent. If Plaintiff wishes to pursue a class action, he must redefine the classes to be ascertainable and not "fail-safe." The hearing on Plaintiff's motion for class certification currently scheduled for March 14, 2011, is hereby **VACATED**.

**IT IS SO ORDERED.**