1  John S. Curtis (Bar No. 50350)
2  Email: jcurtis@azraellaw.net
   **LAW OFFICES OF JULIA AZRAEL**
3  5200 Lankershim Boulevard, Suite 850
4  North Hollywood, CA 91601
   Telephone: (818) 766-5177
5  Facsimile: (818) 766-5047

6
7  David E. Martin *pro hac vice admittee*
   david.e.martin@macys.com
8  Catherine E. Sison *pro hac vice admittee*
   catherine.sison@macys.com
   Macy's, Inc. – Law Department
9  611 Olive Street, 10th Floor
   St. Louis, MO  63101
10 Telephone: (314) 342-6719
11 Facsimile: (314) 342-6066

12 Attorneys for Defendant Macy's, Inc.

13

14             **UNITED STATES DISTRICT COURT**

15             **CENTRAL DISTRICT OF CALIFORNIA**

16
17 CARLOS QUEVEDO,                ) Case No. CV09-1522 GAF (MANx)
   individually and on behalf of )
18 other persons similarly situated, ) Judge:  Honorable Gary A. Feess
                                 )
19                               )
              Plaintiffs,        ) **NOTICE OF MOTION AND MOTION**
20                               ) **TO COMPEL ARBITRATION AND**
      vs.                        ) **STAY CIVIL PROCEEDINGS AND**
21                               ) **MEMORANDUM OF POINTS AND**
                                 ) **AUTHORITIES IN SUPPORT**
22 MACY'S, INC.; MACY'S          )
   DEPARTMENT STORES, INC.       ) (Filed concurrently with the
23 and DOES 1 through 10         ) Declarations of Robert Noeth, Darby
   inclusive,                    ) Odendahl, and David E. Martin)
24                               )
                                 ) Hearing Date:     June 27, 2011
25                               ) Hearing Time:     9:30 a.m.
              Defendants.        ) Place:  Courtroom 740
26                               )
                                 ) Date Action Filed: March 4, 2009
27                               )
28 _____)

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

**TABLE OF CONTENTS**

<u>**PAGE**</u>

I.     INTRODUCTION ...................................................................... 1

II.    STATEMENT OF FACTS .......................................................... 2

     A.     Macy's Solutions InSTORE Dispute Resolution Program ...... 2

     B.     The SIS Program Offers a Fair, Equitable, and Efficient
            Process For Resolving Disputes ............................................. 3

     C.     Quevedo Was Educated about the SIS Program and
            Agreed to Be Bound by the Final Step – Arbitration ............. 5

           1.     The Solutions InSTORE New Hire Brochure ............... 6

           2.     The Opt-Out Election Form ........................................... 6

           3.     The Solutions InSTORE Acknowledgement Form ....... 7

     D.     Quevedo Elected to Participate in Step 4 – Arbitration ........... 7

III.    ARGUMENT ............................................................................ 8

     A.     Public Policy Favors Enforcing Arbitration Agreements ........ 8

     B.     This Motion Is Timely Following *Concepcion* ...................... 9

     C.     The Parties Arbitration Agreement Is Valid and
            Enforceable ......................................................................... 10

           1.     The Arbitration Agreement Is Valid and
                Enforceable ................................................................. 10

               a.     Quevedo Accepted Macy's Offer to
                    Arbitrate, and Sufficient Consideration
                    Supports the Agreement ..................................... 10

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

b.    The SIS Program Contains Safeguards to Ensure Quevedo's Claims Are Decided Fairly and Efficiently ......................................... 12

    (1)    Neutral Arbitrator.................................... 13

    (2)    Discovery Is Provided............................. 13

    (3)    Arbitrator Award..................................... 13

    (4)    Remedies Allowed .................................. 13

    (5)    Employee Fee Is Minimal....................... 14

    (6)    Additional SIS Program Features ........... 14

c.    The SIS Program Is Not Unconscionable ......... 14

d.    The Arbitration Agreement's Representative Action Waiver Is Valid and Enforceable and Precludes Quevedo from Asserting Claims on Behalf of Other Employees ......................... 15

2.    The Arbitration Agreement Covers Quevedo's Individual Claims but Precludes His Representative Claims ................................................ 21

D.    Federal Courts Have Consistently Held SIS Program Arbitration Is Proper, Valid, and Enforceable, and Have Consistently Compelled Arbitration Pursuant to the SIS Program ....................................................................... 24

E.    This Action Should Be Stayed Pending Arbitration.............. 24

IV.    CONCLUSION ............................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF JULIA AZRAEL**
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

# TABLE OF AUTHORITIES

PAGE

**FEDERAL CASES**

*Arellano v. T-Mobile USA, Inc.*, No. 10-05663,
   2011 U.S. Dist. LEXIS 52142 (N.D. Cal. May 16, 2011) .........................20

*AT & T Mobility LLC v. Concepcion*, 131 S.Ct. 1740,
   179 L.Ed.2d 742, 2011 U.S. LEXIS 3367 (2011).............................. passim

*Bradley v. Harris Research, Inc.*, 275 F.3d 884 (9th Cir. 2001)...................19

*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005).......20

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
   207 F.3d 1126 (9th Cir. 2000)...................................................................22

*Circuit City Stores, Inc. v. Adams* 532 U.S. 105 (2001) ................................8

*Circuit City Stores, Inc. v. Ahmed* 283 F.3d 1198 (9th Cir. 2002)...............12

*Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002) .................11

*Dean Witter Reynolds, Inc., v. Byrd* 470 U.S. 213 (1985) ...........................10

*Doctor's Assocs. v. Casarotto*, 517 U.S. 681,
   116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ..................................................19

*Dubois v. Macy's East Inc.*, No. 06-6522,
   2007 U.S. Dist. LEXIS 66500 (E.D.N.Y. 2007).......................................24

*First Options v. Kaplan*, 514 U.S. 938 (1995) .............................................22

*Fisher v. A.G. Becker Paribas Incorporation*,
   791 F.2d 691 (9th Cir. 1986)....................................................................10

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ............... 8, 20

*Hicks v. Macy's Dept. Stores, Inc.*,
   2006 U.S. Dist. LEXIS 68268 (N.D. Cal. 2006) ......................... 11, 12, 24

*Hill v. Ins. Co. of the West*, 2010 U.S. Dist. LEXIS 40632
   (S.D. Cal. Apr. 26, 2010) .........................................................................22

*Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399,
   85 L.Ed. 581 (1941) .................................................................................18

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002) ................................21

*Hunt v. Macy's Retail Holdings, Inc.*, 2009 U.S. Dist. LEXIS 9783 (E.D. Mich. 2009) ...........................................................................................24

*Iberia Credit Bureau Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004) .................................................................................... 19, 20

*Johnson v. Macy's South, LLC*, 2007 U.S. Dist. LEXIS 72519 (N.D. Ga. 2007) .................................................................................24

*Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185 (9th Cir. 1986) ........9

*Manigault v. Macy's East, LLC*, 318 Fed.Appx. 6 (2nd Cir. 2009) .............24

*Marley v. Macy's South*, 2007 U.S. Dist. LEXIS 43891 (S.D. Ga. 2007).....24

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) ........................ 16, 17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) .............................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) .................. 8, 16, 20, 22

*Nguyen v. Federated Dept. Stores, Inc.*, 2006 U.S. Dist. LEXIS 2878 (N.D. Ga. 2006) .................................................................................24

*Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ......................................................................... 9, 19

*Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814 (11th Cir. 2001) .................................................................................19

*Rupert v. Macy's, Inc.*, 2010 U.S. Dist. LEXIS 54050 (N.D. Ohio 2010) .................................................................................24

*Securities Indus. Ass'n v. Connolly*, 883 F.2d 1114, 1123 (1st Cir. 1989) .................................................................................20

*Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) .................................................................................19

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) ..................................................................... 16, 19, 23

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

*Tinder v. Pinkerton Security* 305 F.3d 728 (7th Cir. 2002)...........................12

*U.S. ex rel. Oliver v. Parsons Co.* 195 F.3d 457 (9th Cir. 1999) .................10

*United Steelworkers of America v. Warrior & Gulf Navigation Co.* 363 U.S.
   574 (1960) ........................................................................................22

*Vitolo v. Bloomingdale's, Inc.*, No. 09-7728, slip op.
   (C.D. Cal. Mar. 22, 2011) .............................................................10

*Volt Information Sciences, Inc. v. Bd. of Trustees of
   Leland Stanford Junior Univ.*, 489 U.S. 468,
   109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) .................................................16

*Wagner v. Stratton Oakmont, Inc.* 83 F.3d 1046 (9th Cir. 1996).................10

*Zekri v. Macy's Retail Holdings, Inc.*, 2010 U.S. Dist. LEXIS 119453 (N.D.
   Ga. 2010)..........................................................................................24

## CALIFORNIA CASES

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal.4th 83, 6 P.3d 669, 99 Cal.Rptr.2d 745 (2000) ................... 1, 12, 14

*Asmus v. Pac. Bell*, 23 Cal.4th 1, 15, 999 P.2d 71
   Cal.Rptr.2d 179 (2000) ....................................................................12

*Brookwood v. Bank of Am..* 45 Cal.App.4th 1667,
   53 Cal.Rptr.2d 515 (1996) .................................................................12

*Craig v. Brown & Root*, 84 Cal.App.4th 416,
   100 Cal.Rptr.2d 818 (2000) ..............................................................12

*Discover Bank v. Superior Court*, 36 Cal.4th 148,
   113 P.3d 1100, 30 Cal.Rptr.3d 76 (2005) ............................................. 9, 17

*Gentry v. Superior Court*, 42 Cal.4th 443, 165 P.3d 556,
   64 Cal.Rptr.3d 773 (2007) ................................................................. 9, 17

*Izzi v. Mesquite Country Club*, 186 Cal.App.3d 1309,
   231 Cal.Rptr. 315 (1986) ..................................................................13

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
   74 Cal.App.4th 1105, 88 Cal.Rptr.2d 664 (1999)......................................13

*Merced County Sheriff's Employee's Ass'n v. County of Merced*,
  188 Cal.App.3d 662, 233 Cal.Rptr. 519 (1987)..........................................11

*Newberger v. Rifkind*, 28 Cal.App.3d 1070, 104 Cal.Rptr. 663 (1972)........12


**FEDERAL STATUTES**

9 U.S.C. § 1.................................................................................5

9 U.S.C. § 2........................................................................ 8, 10

9 U.S.C. § 3.................................................................... 10, 18, 24

9 U.S.C. § 4..................................................................... 1, 16, 18


**CALIFORNIA STATUTES**

CAL. BUS. & PROF. CODE §§ 17200 *et seq.*..................................................22

CAL. LABOR CODE § 229.................................................................19

CAL. LABOR CODE § 2699..................................................... 21, 22

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

1   TO THE COURT, CARLOS QUEVEDO AND HIS ATTORNEYS

2   OF RECORD:

3   PLEASE TAKE NOTICE that on June 27, 2011 at 9:30 a.m., or as soon

4   thereafter as counsel may be heard, in Courtroom 740 of the United States

5   District Court, Central District of California, Western Division, located at

6   255 East Temple Street, Los Angeles California, 90012, Hon. Gary A. Feess

7   presiding, Defendant Macy's, Inc. ("Macy's") will and hereby does move the

8   Court for an order compelling binding arbitration of this matter and staying

9   this action pending the outcome of arbitration.

10  The motion is based on Plaintiff Carlos Quevedo's ("Quevedo")

11  agreement to arbitrate any and all claims arising out of his employment with

12  Macy's. The claims that are the subject of this litigation fall within the scope

13  of the parties' Solutions InSTORE mutual arbitration agreement because all

14  of the claims alleged against Macy's by Quevedo relate to his employment

15  with Macy's. The terms of the arbitration agreement are fair under

16  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 6 P.3d

17  669, 99 Cal.Rptr.2d 745 (2000) and are not unconscionable, and the

18  arbitration agreement is valid and enforceable as a matter of law.

19  Based on these grounds, and pursuant to section 4 of the Federal

20  Arbitration Act, 9 U.S.C. § 4, Macy's hereby moves the Court to dismiss

21  Quevedo's representative claims alleged in his Second Amended Complaint,

22  compel Quevedo to submit to arbitration all remaining individual claims

23  against Macy's, and stay this action pending resolution of the arbitration.

24  This Motion will be based on this Notice and Motion, the supporting

25  Memorandum of Points and Authorities filed herewith, the Declarations of

26  Robert Noeth and Darby Odendahl filed concurrently herewith, the

27  pleadings on file in this case, and such additional facts and arguments as

28  may be presented in reply briefing and at the hearing.

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 29, March 31 and May 11, 2011. *See* Declaration of David E. Martin ¶¶ 2-6.

Dated:  May 25, 2011                    DEFENDANT MACY'S, INC.


                                        By:_____/s/ David E. Martin_____
                                            David E. Martin, pro hac vice admittee

**LAW OFFICES OF JULIA AZRAEL**
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

# MEMORANDUM OF POINTS AND AUTHORITIES
## I.     INTRODUCTION

Plaintiff Carlos Quevedo ("Quevedo") agreed to have any and all employment-related legal disputes with Macy's resolved exclusively by final and binding arbitration pursuant to Solutions InSTORE, Macy's internal dispute resolution program. Quevedo subsequently brought the present action for alleged Labor Code violations both individually and on a representative basis. Because California law precluded Macy's from enforcing the representative action waiver in the parties' arbitration agreement and compelling Quevedo's individual claims to arbitration, Macy's was required to defend against Quevedo's representative claims in this forum, including successfully defending against Quevedo's initial class certification motion.

On April 27, 2011, the U.S. Supreme Court issued its decision in *AT & T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 179 L.Ed.2d 742, 2011 U.S. LEXIS 3367 (2011) and held waivers of representative actions in arbitration agreements are enforceable and state laws that obstruct or frustrate enforcement of such waivers are preempted by the Federal Arbitration Act ("FAA"). Pursuant to *Concepcion*, Macy's now files this motion seeking to enforce the representative action waiver in the parties' arbitration agreement. Macy's respectfully requests the Court to (i) enforce Quevedo's representative action waiver in the parties' arbitration agreement and dismiss Quevedo's representative claims, (ii) require Quevedo to honor his arbitration agreement and compel Quevedo's individual claims, which unquestionably fall within the ambit of the arbitration program, to arbitration, and (iii) stay this proceeding pending the resolution of the arbitration.

## II.    STATEMENT OF FACTS

### A.    Macy's Solutions InSTORE Dispute Resolution Program

In 2003, Macy's, Inc. (formerly known as Federated Department Stores, Inc.) developed and implemented a comprehensive internal early dispute resolution program called Solutions InSTORE (hereinafter the "SIS Program"). Declaration of Robert Noeth ("Noeth Decl.") ¶ 4. The SIS Program is a four-step process that gives employees an opportunity to raise and resolve workplace disputes early and fairly. *Id.* ¶¶ 4, 8-9. The SIS Program was rolled out to all Macy's divisions and subsidiaries in fall 2003, and a slightly modified version of the SIS Program, which is at issue here, became effective January 1, 2007. *Id.* ¶ 7.

The four steps of the SIS Program are as follows:

**Step 1:**   The SIS Program begins with "Open Door." Employees are encouraged to bring their concerns to a supervisor or member of local management informally.

**Step 2:**   If the employee is not satisfied with the Step 1 decision, he may proceed to Step 2. In Step 2, the employee submits a written complaint to a senior human resources executive for investigation. A human resources executive not involved in the underlying decision conducts the investigation.

**Step 3:**   If the employee is not satisfied with the Step 2 decision, and the claim involves legally protected rights, the employee may proceed to Step 3. The employee submits a written Request for Reconsideration to the Office of Solutions InSTORE to begin this part of the process. If the dispute involves claims related to layoffs, harassment, discrimination, reduction in force, or other statutory violations, a trained professional investigates the issue thoroughly and objectively. Other disputes, including disputes

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

over terminations and final warnings, may be submitted to a Peer Review Panel at the employee's option. In either case, the local management is not involved in the decision at this step.

**Step 4:**   The fourth and final step of the SIS Program is binding arbitration and covers those employees who have not returned an opt-out form within the prescribed time limits. Step 4 arbitration is administered by the American Arbitration Association ("AAA").

*Id.* ¶ 9.  By accepting employment with Macy's, all employees agree to be covered by Steps 1 through 4 of the SIS Program. *Id.* ¶ 8 and Ex. A at pp. 15-16. However, an employee can opt out of Step 4 – Arbitration by completing an Election Form and mailing it back to the Solutions InSTORE post office box address listed on the Form.  *Id.* ¶¶ 9, 10, 13, Ex. A at pp. 15-16, and Ex. C.

The SIS Program prohibits retaliation against employees who use or opt out of the SIS Program. *Id.* ¶ 12 and Ex. A at p. 16. An employee's choice to stay in or opt out of Step 4 arbitration is confidential. *Id.* ¶ 13. No one in an employee's local workplace has access to this information. *Id.* In fact, only a select few company employees located in Ohio have access to an employee's decision to opt out of Step 4 – Arbitration. *Id.* Thus, employment with Macy's is not conditioned on agreeing to arbitration and an employee's decision in this regard does not affect his employment.

**B.   The SIS Program Offers a Fair, Equitable, and Efficient Process for Resolving Disputes**

The SIS Program is designed to ensure that employees are treated fairly at every step:

- **The Employee Is In Control.** At each step of the SIS Program, only the employee has the right to proceed to the next step. Thus, an

**LAW OFFICES OF JULIA AZRAEL**
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

employee who obtains a favorable result at any of the first three steps can bind Macy's to that result simply by declining to go to the next step. *Id.* ¶ 11.

- **Minimal or No Fees or Costs to the Employee.** An employee initiating arbitration pays a filing fee of one day's pay or $125, whichever is less. Macy's pays the other arbitration costs, except for incidentals like photocopying and producing evidence. *Id.* ¶ 15(a) and Ex. A at p. 23.

- **Macy's Reimburses the Employee's Attorney (or the Employee).** If the employee consults with an attorney for the arbitration, Macy's reimburses legal fees up to $2,500 over each continuously rolling 12-month period, no matter what the outcome. If the employee is not represented by an attorney, Macy's will reimburse the employee for incidental costs up to $500 over each continuously rolling 12-month period. *Id.* ¶ 15(c) and Ex. A at p. 23.

- **The Employee Decides Whether Lawyers Are Involved.** If the employee decides not to have an attorney present at the arbitration, Macy's also appears without counsel. *Id.* ¶ 15(b) and Ex. A at p. 20.

- **Governing Rules.** The arbitration is administered for the most part under the AAA employment arbitration rules. Any exceptions to the AAA rules are noted in the Plan Document. *Id.* ¶ 15(f).

- **Mutuality.** If an employee is required to arbitrate claims against Macy's, Macy's has to resolve any employment-related disputes it has with the employee by arbitration as well. *Id.* ¶ 14 and Ex. A at p. 17.

- **Discovery.** Discovery is permitted and includes document disclosures, 20 interrogatories (each of which may contain a request for production of documents), and 3 depositions. The arbitrator also may allow additional discovery. *Id.* ¶ 15(d) and Ex. A at pp. 20-21.

- **No Curtailment of Ultimate Relief or Limitations Periods.** The arbitrator has the same power and authority as a judge to grant any ultimate relief under any applicable law, including attorneys' fees and costs. The statutes of limitation that apply to court claims apply equally to the arbitration procedure, and are not curtailed in any way by the SIS Program. *Id.* ¶ 15(e) and Ex. A at pp. 18, 23.

The Solutions InSTORE Plan Document describes the types of claims that fall within the ambit of Step 4. With limited exceptions, the agreement covers employment-related claims asserted by the employee, whether the claims arise under federal, state, or local law. *Id.* ¶ 14 and Ex. A at p. 17. The only pertinent exception is the agreement's provision which prevents the arbitrator from arbitrating claims brought in a representative capacity. *Id.* ¶ 14 and Ex. A at p. 22. The arbitration agreement is subject to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* *Id.* Ex. A at p. 24.

## C.   Quevedo Was Educated about the SIS Program and Agreed to Be Bound by the Final Step – Arbitration

Quevedo was hired on July 16, 2008 as a tailor at the Macy's store in Mission Viejo, California, and on October 9, 2008, Quevedo's employment was terminated. *Id.* ¶ 16.

Employees agree to be covered by all four steps of the SIS Program by taking or continuing a job with Macy's. *Id.* ¶ 8 and Ex. A at pp. 15-16. Importantly, however, all employees are given the opportunity to opt out of Step 4 – Arbitration within 30 days of their hire. *Id.* ¶¶ 8-10 and Ex. C. Employees are made aware of the SIS Program details and their ability to opt-out of Step 4 – Arbitration in various ways, including: (1) the Solutions InSTORE New Hire Brochure; (2) the Plan Document; (3) the opt-out Election Form; and (4) the Solutions InSTORE Acknowledgement Form. *Id.* ¶ 17 and Exs. A-F.

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

### 1. __The Solutions InSTORE New Hire Brochure__

All new employees are provided with the Solutions InSTORE New Hire Brochure at their orientation. The Brochure explains each step of the SIS Program in detail. _Id. ¶ 18 and Ex. B._ The Brochure begins with an overview of the SIS Program, and then reiterates during the remaining pages that: Macy's does not retaliate against employees for using the SIS Program; arbitration is an option rather than a requirement; and Macy's bears the overwhelming majority of the costs and fees of the various steps. _Id._ The Brochure, which devotes several pages to Step 4 – Arbitration, clearly explains the employee's right to opt out of Step 4. _Id. ¶ 19 and Ex. B at pp. 9-11._ The Brochure emphasizes that the arbitration process is binding, covers any dispute related to the employee's employment, and is a waiver of the right to a court proceeding and jury trial. _Id._ Finally, the Brochure advises employees to read the Plan Document (a complete copy of which is included in the Brochure) and identifies other places where the employee can obtain a copy of the Plan Document or ask questions, such as requesting it from the local human resources office, logging on to www.employeeconnection.net, or e-mailing or calling the Office of Solutions InSTORE. _Id. ¶¶ 18-19 and Ex. B at p. 39._

### 2. __The Opt-Out Election Form__

The Brochure also contains an "Early Dispute Resolution Program Election Form." _Id. ¶¶ 20-21 and Ex. C._ The Election Form makes clear that an employee must act within 30 days of his hire date if the employee wishes to opt out of Step 4 arbitration; otherwise the employee will be covered by all four steps of the SIS Program. _Id. ¶¶ 21 and Ex. C._ The opt-out language is clear and conspicuous, and the Election Form clearly states where to mail the form in order to opt out of arbitration. _Id._

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

### 3.   The Solutions InSTORE Acknowledgement Form

Quevedo signed an electronic acknowledgment form confirming that he received his Brochure, Plan Document, and Election Form. *Id.* Ex. D; Declaration of Darby Odendahl ("Odendahl Decl.") ¶ 12 and Exs. A, G. To electronically sign the acknowledgement, the employee is required to input his social security number, date of birth, and zip code. Odendahl Decl. ¶ 8.

By electronically acknowledging receipt of the Brochure, Plan Document, and Election Form, Quevedo expressly agreed as follows: "*I understand that I have 30 days from my date of hire to review this information and postmark my form to the Office of Solutions InSTORE if I wish to exclude myself from coverage under Step 4 of the program, Arbitration*"; and "*I understand that I am covered by and have agreed to use all 4 steps of Solutions InSTORE automatically by my taking or continuing a job in any part of Macy's, Inc.*"; and "*I understand that if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my election form within 30 days of hire and mailing it to the Office of Solutions InSTORE.*" Noeth Decl. ¶ 22 and Ex. D; Odendahl Decl. ¶ 7 and Exs. A, G.

### D.   Quevedo Elected to Participate in Step 4 – Arbitration

The Office of Solutions InSTORE has regular procedures for processing Election Forms. Each Election Form is date-stamped when it is opened. The Form is reviewed for completeness and then loaded into the PeopleSoft Human Resource System. This System is used by the Office of Solutions InSTORE to record opt-out status.  Hard copies of Election Forms are maintained in filing cabinets by social security number. Noeth Decl. ¶¶ 26, 29. The Office of Solutions InSTORE reviewed the PeopleSoft Human Resource System to determine if Quevedo had returned an Election Form. According to the system, Quevedo never returned an Election Form

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

after commencing his employment in July 2008. Likewise, the hard copy files do not contain an Election Form for Quevedo.  Noeth Decl. ¶¶ 28-29.

### III.   ARGUMENT

As discussed above, Quevedo had ample notice of the SIS Program, and had sufficient opportunity to opt out of Step 4 – Arbitration if he chose to do so. By accepting a position with Macy's, and affirmatively acknowledging receipt of the SIS Program materials and his right to opt out of Step 4 arbitration, Quevedo, by not exercising his right to opt out, created a binding agreement to arbitrate all claims relating to his employment.

### A.   Public Policy Favors Enforcing Arbitration Agreements

The arbitration agreement at issue here provides that the FAA governs. Noeth Decl. Ex. B at p. 16. In 1925, Congress enacted the FAA to reverse decades of judicial hostility toward arbitration agreements and to place these agreements on the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Under the FAA, arbitration is proper when there is a valid written agreement covering the asserted claims. 9 U.S.C. § 2. This includes employment arbitration agreements, even where some or all of the claims themselves arise under state law. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Guided by the FAA, the U.S. Supreme Court has repeatedly held arbitration agreements are to be read liberally to effectuate their purpose, *id.* at 25, and are to be

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

1  "rigorously enforced." *Perry v. Thomas*, 482 U.S. 483, 490, 107 S.Ct. 2520,

2  96 L.Ed.2d 426 (1987).

3  **B.   This Motion Is Timely Following *Concepcion***

4  Given the posture of this case, Macy's motion to compel arbitration is

5  timely. Quevedo's Second Amended Complaint alleges representative

6  claims. Prior to *Concepcion*, Macy's was unable to compel arbitration of

7  Quevedo's claims because the arbitration agreement between Quevedo and

8  Macy's contains a representative action waiver that specifically prevents an

9  employee from asserting claims in arbitration on a representative basis, and

10 before *Concepcion* such a provision in an arbitration agreement was invalid

11 and unenforceable under California law. *See Discover Bank v. Superior*

12 *Court*, 36 Cal.4th 148, 113 P.3d 1100, 30 Cal.Rptr.3d 76 (2005); *Gentry v.*

13 *Superior Court*, 42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773 (2007).

14 Following *Concepcion*, which held representative action waivers in

15 arbitration agreements are enforceable and the FAA preempts state laws that

16 frustrate enforcement of such waivers, the representative action waiver in the

17 parties' arbitration agreement is enforceable.

18 Following *Concepcion*, Macy's has promptly sought to dismiss

19 Quevedo's representative claims and compel Quevedo's individual claims to

20 arbitration pursuant to the parties' arbitration agreement. Prior to

21 *Concepcion*, any efforts by Macy's to compel Quevedo to arbitrate his

22 representative claims would have been futile because, under *Discover Bank*

23 and *Gentry*, the agreement could not have been enforced as written. It is well

24 established that a party's ability to compel arbitration is not impacted by a

25 delay in seeking to compel arbitration if the party previously had no right to

26 arbitrate under then-exiting law. *See Letizia v. Prudential Bache Secs., Inc.*,

27 802 F.2d 1185, 1187 (9th Cir. 1986) (motion to compel arbitration following

28 change in law was timely; earlier motion to compel would have been futile);

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

*Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 693-97 (9th Cir. 1986) (same). In a similar case involving the same arbitration agreement, Judge Fischer held Bloomingdale's, Inc. (a Macy's subsidiary) did not waive its right to compel arbitration following denial of the plaintiff's motion for class certification because a motion to compel would have been futile due to *Gentry*. *See* Order re Defendant's Motion to Compel Arbitration and Stay Civil Proceedings and Order Staying Action, *Vitolo v. Bloomingdale's, Inc.*, No. 09-7728, slip op. at 2 (C.D. Cal. Mar. 22, 2011). Accordingly, following *Concepcion*, this motion to compel arbitration is timely.

## C.   The Parties' Arbitration Agreement Is Valid and Enforceable

On a motion to compel arbitration, a court considers two key issues: (1) whether the parties formed a valid and enforceable agreement to arbitrate, and (2) whether the agreement to arbitrate encompasses the underlying dispute. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); 9 U.S.C. §§ 2, 3.

### 1.   *The Arbitration Agreement Is Valid and Enforceable*

#### a.   Quevedo Accepted Macy's Offer to Arbitrate, and Sufficient Consideration Supports the Agreement

The parties' arbitration agreement is valid and enforceable. In determining validity, a court interprets "the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.* 83 F.3d 1046, 1049 (9th Cir. 1996). Under general principles of California contract law, a valid and enforceable contract must satisfy the following requirements: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient consideration. *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999). Each element is satisfied here.

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

**Quevedo assented to arbitration by failing to opt out.** Both Quevedo and Macy's are parties capable of contracting, and a mutual agreement to arbitrate their disputes is lawful. Mutual consent is determined via the reasonable meaning of the words and acts of the parties. *Merced County Sheriff's Employee's Ass'n v. County of Merced*, 188 Cal.App.3d 662, 670, 233 Cal.Rptr. 519 (1987). Manifestation of consent may be "'wholly or partly by written or spoken words or by other acts or by failure to act.'" *Id.* (citation omitted). "'[W]here circumstances...between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent.'" *Hicks v. Macy's Dep't. Stores, Inc.*, 2006 U.S. Dist. LEXIS 68268, *5 (Sept. 11, 2006)  (quoting *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002)). Quevedo manifested his assent here by failing to opt out when he had a duty to do so to avoid being bound.

While employees who accept employment with Macy's agree to be bound by all four steps of the SIS Program, including arbitration, Macy's gives them an opportunity to exclude themselves from the arbitration step. However, the SIS Program documents are clear that, absent an opt-out, employees are bound to arbitration. <u>Noeth Decl. Ex. A at pp. 15-16, Ex. B at p. 39, Ex. C, and Ex. D.</u> Thus, Quevedo had the obligation to opt out if he did not want to be bound by arbitration. By choosing not to return the "opt-out" Election Form despite the opportunity to do so, Quevedo manifested his assent to participate in Step 4 arbitration.

When an employee has notice of an arbitration agreement and a meaningful opportunity to opt out and then fails to do so, he has assented, and the failure to opt out results in a contract to arbitrate. *Najd*, 294 F.3d at 1109 (employee assented to employer arbitration agreement by failing to opt out of the program); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198,

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

1199-1200 (9th Cir. 2002) (same); *Hicks*, 2006 U.S. Dist. LEXIS 68268, *5 (Macy's employee assented to SIS Program arbitration by failing to opt out).

**Ample consideration supports the parties' arbitration agreement.** Continued employment after receiving notice of an arbitration policy is sufficient to support a binding agreement to arbitrate. *Craig v. Brown & Root*, 84 Cal.App.4th 416, 420, 100 Cal.Rptr.2d 818 (2000) ("[A] party's acceptance of an agreement to arbitrate may be…implied-in-fact where…continued employment constitutes her acceptance"); *Asmus v. Pac. Bell*, 23 Cal.4th 1, 15, 999 P.2d 71, 96 Cal.Rptr.2d 179 (2000) ("Continuing to work after the policy termination and subsequent modification constituted acceptance of the new employment terms."); *Brookwood v. Bank of Am.*. 45 Cal.App.4th 1667, 1673-74, 53 Cal.Rptr.2d 515 (1996) (same); *cf. Newberger v. Rifkind*, 28 Cal.App.3d 1070, 1073, 104 Cal.Rptr. 663 (1972) ("Consideration is inherent where stock options are granted to employees and the employee continues employment knowing of the options").

Macy's agreement to bind itself to the arbitration agreement, and foreclose its right to seek redress in the courts, also is sufficient consideration. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728 (7th Cir. 2002) (employee's continued employment and employer's promise to bind itself to arbitration policy is sufficient consideration for agreement); Noeth Decl. ¶ 14 and Ex. A at p. 17.

### b.      The SIS Program Contains Safeguards to Ensure Quevedo's Claims Are Decided Fairly and Efficiently

The SIS Program satisfies each of the criteria articulated by the California Supreme Court to ensure employee claims are decided fairly and efficiently: the SIS Program (1) provides for selection of neutral arbitrators; (2) permits more than minimal discovery; (3) requires a written award; (4) provides for the same relief that would be available in court; and (5) does

not put unreasonable financial burdens on the employee. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 120, 6 P.3d 669, 99 Cal.Rptr.2d 745 (2000)

### (1)   Neutral Arbitrator

Under the SIS Program, the arbitrator is selected from a panel of seven names provided by the AAA. Each side takes turns striking the arbitrators. If both parties are unhappy with the arbitrator selected, another panel can be requested. Noeth Decl. Ex. A at p. 20. California courts have recognized the fairness and neutrality of the AAA. *See Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal.App.4th 1105, 1130 n. 21, 88 Cal.Rptr.2d 664 (1999); *Izzi v. Mesquite Country Club*, 186 Cal.App.3d 1309, 1318, 231 Cal.Rptr. 315 (1986).

### (2)   Discovery Is Provided

The SIS Program provides for the voluntary disclosure of documents by both parties related to the claims and defenses at issue, each party is allowed to take three depositions and propound 20 interrogatories (each of which can include a document request for related documents), and the parties can serve subpoenas. The arbitrator also has discretion to allow additional discovery.  Noeth Decl. ¶ 15(d) and Ex. A at pp. 20-21.

### (3)   Arbitrator Award

The SIS Program provides for a written award and allows the arbitrator the discretion to include specific findings and conclusions of law. Noeth Decl. ¶ 15(g) and Ex. A at p. 23.

### (4)   Remedies Allowed

There is no contractual limitation of remedies; the arbitrator may award all the same relief that a court could award, including punitive damages and attorney's fees.  Noeth Decl. ¶ 15(e) and Ex. A at p. 23.

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

### (5)   Employee Fee Is Minimal

The most an employee can be asked to pay is the lesser of one day's base pay or $125. Macy's bears the rest of the costs other than incidentals related to the arbitration, such as photocopying and producing evidence. Noeth Decl. ¶ 15(a) and Ex. A at p. 23.

### (6)   Additional SIS Program Features

Unlike some arbitration programs, the SIS Program does not restrict the applicable statute of limitations; any limits are set by the applicable law. Noeth Decl. ¶ 15(e) and Ex. A at p. 18. In addition, if the employee consults with or is represented by an attorney for the arbitration, Macy's reimburses the employee's legal fees up to $2,500 over a continuously rolling 12-month period. This amount is paid even if the employee is not successful at the arbitration. If the employee is not represented by an attorney, Macy's will reimburse the employee for incidental costs up to $500 over the same rolling period. The arbitrator has the same power as a judge to order the company to pay the additional attorney's fees and the employee's fees and costs if the plaintiff prevails. Noeth Decl. ¶ 15(c) and Ex. A at p. 23.

### c.   The SIS Program Is Not Unconscionable

To determine whether an arbitration agreement is unconscionable, courts analyze the procedural and substantive unconscionability of the agreement. *Armendariz*, 24 Cal.4th at 114. Procedural unconscionability focuses on "oppression" and "surprise." *Id.* Substantive unconscionability focuses on overly harsh or one-sided results. *Id.*

The SIS Program is not procedurally unconscionable: (1) employees like Quevedo have a 30-day opt out period; (2) numerous materials related to the SIS Program are given out to newly hired employees; (3) the complete SIS Program is spelled out to new employees; and (4) an employee's decision respecting arbitration is confidential – an employee's supervisor and

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

co-workers will not know what decision an employee made unless the employee tells them. Only the few employees in the Office of Solutions InSTORE and the person inputting the information into the database know what any given employee has elected to do. Noeth Decl. ¶¶ 10, 13, 17-25.

The SIS Program also is not substantively unconscionable. The SIS Program is mutual: if Macy's pursues a claim against an employee who has not opted out of arbitration, Macy's must use the arbitration forum as well. The SIS Program also does not shorten the applicable statutes of limitations, or limit remedies in any way. Noeth Decl. ¶¶ 14, 15(e) and Ex. A at pp. 17, 23. In short, other than streamlined discovery (which meets the standards of *Armendariz*), the waiver of the right to a jury (which is inherent in any agreement to arbitrate), and the restriction on an employee's ability to seek relief in a representative capacity, there are very few differences between arbitration under the SIS Program and litigating in a court of law. Thus, the SIS Program is not substantively unconscionable.

### d. The Arbitration Agreement's Representative Action Waiver Is Valid and Enforceable and Precludes Quevedo from Asserting Claims on Behalf of Other Employees

Quevedo is pursuing claims on a representative basis on behalf of other Macy's employees. [Doc. 56]. However, under Article 11(f)(ii) of the parties' arbitration agreement, Quevedo explicitly waived any ability to bring claims on behalf of other employees:

> The Arbitrator shall not consolidate claims of different Associates into one (1) proceeding. Nor shall the Arbitrator have the power to hear an arbitration as a class or collective action. (A class or collective action involves representative members of a large group, who claim to share a common interest, seeking relief on behalf of the group.)

1  Noeth Decl. Ex. A at p. 12.

2  　　　Prior to *Concepcion¸* representative action waivers in arbitration
3  agreements were unenforceable under California law, and California courts
4  were not allowed to enforce arbitration agreements that contained such
5  waivers, despite the U.S. Supreme Court's repeated pronouncement that the
6  FAA's purpose is to ensure private arbitration agreements are enforced
7  "according to their terms." *Concepcion*, 131 S.Ct. 1740, 2011 U.S. LEXIS
8  3367 at *18; *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S.Ct. 1758,
9  1773, 176 L.Ed.2d 605 (2010); *Mastrobuono v. Shearson Lehman Hutton,*
10  *Inc.*, 514 U.S. 52, 57-58, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Volt*
11  *Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior*
12  *Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

13  　　　The U.S. Supreme Court has made clear that arbitration agreements
14  (including those with representative action waivers) must be enforced as
15  written: "Whether enforcing an agreement to arbitrate or construing an
16  arbitration clause, courts and arbitrators must 'give effect to the contractual
17  rights and expectations of the parties.'" *Stolt-Nielsen*, 130 S.Ct. at 1773-74
18  (quoting *Volt*, 498 U.S. at 479). This is so even if the result is "piecemeal
19  resolution" of claims. *Moses H. Cone*, 460 U.S. at 20. "In this endeavor, 'as
20  with any other contract, the parties' intentions control'", *Stolt-Nielsen*, 130
21  S.Ct. at 1774 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*
22  *Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)), and "those
23  intentions are generously construed as to issues of arbitrability", *Mitsubishi*
24  *Motors*, 473 U.S. at 626. This is so because the FAA reflects a "liberal
25  federal policy favoring arbitration", *Moses H. Cone*, 460 U.S. at 24, and
26  explicitly allows a party to an arbitration agreement to petition a court for an
27  order "directing that 'arbitration proceed in the manner provided for in such
28  agreement.'" *Stolt-Nielsen*, 130 S.Ct. at 1774 (quoting FAA, 9 U.S.C. § 4).

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

"[P]arties are 'generally free to structure their arbitration agreements as they see fit'", *id.* (quoting *Mastrobuono*, 514 U.S. at 57), including specifying "*with whom* they choose to arbitrate their disputes", *id.* (emphasis in original). Because "[i]t falls to courts and arbitrators to give effect to these contractual limitations...courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Id.* at 1774-75.

Despite the U.S. Supreme Court's prior pronouncements that arbitration agreements must be enforced as written, prior to *Concepcion* the California Supreme Court did not allow representative action waivers in arbitration agreements to be enforced. In *Discover Bank v. Superior Court*, the California Supreme Court held such waivers in consumer arbitration agreements were unconscionable and unenforceable. 36 Cal.4th 148 (2005). Similarly, in *Gentry v. Superior Court*, which relied heavily on (and was designed to clarify) *Discover Bank*, the California Supreme Court held an employer arbitration agreement "cannot be misused to accomplish a de facto waiver" of an employee's unwaivable statutory rights (in *Gentry*, the right to receive overtime pay), and that because such waivers could lead to a de facto waiver of unwaivable statutory rights, such waivers violated public policy and were unenforceable unless the trial court determined otherwise based on narrow and discretionary criteria. 42 Cal.4th 443 (2007). In both *Discover Bank* and *Gentry*, the California Supreme Court claimed the respective rules invalidating class and collective action waivers in arbitration agreements were not preempted by the FAA because the rules purportedly were "arbitration-neutral", i.e., they allegedly did not apply specifically to arbitration agreements but to all contracts generally. *Discover Bank*, 36 Cal.4th at 165-66; *Gentry*, 42 Cal.4th at 465.

**LAW OFFICES OF JULIA AZRAEL**
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

1       In *Concepcion*, the U.S. Supreme Court held the FAA preempted the

2   *Discover Bank* rule because the rule prohibited enforcement of arbitration

3   agreements "according to their terms," and therefore the rule stood "'as an

4   obstacle to the accomplishment and execution of the full purposes and

5   objectives of Congress'". *Concepcion*, 131 S.Ct. 1740, 2011 U.S. LEXIS

6   3367 at *17, 33 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399,

7   85 L.Ed. 581 (1941)). The Court focused on *Discover Bank*'s attempt to

8   avoid enforcing the arbitration agreement as it was written, noting FAA § 3

9   "requires courts to stay litigation of arbitral claims pending arbitration of

10  those claims 'in accordance with the terms of the agreement'; and § 4

11  requires courts to compel arbitration 'in accordance with the terms of the

12  agreement'". *Id.* at *19. Because one of "the terms of the agreement" in

13  *Concepcion* was a representative action waiver, and because the *Discover*

14  *Bank* rule precluded enforcement of that term due to the arbitration

15  agreement's purported unconscionability, the Court held the *Discover Bank*

16  rule was preempted by the FAA. *Id.*

17      In *Concepcion*, the U.S. Supreme Court rejected the California

18  Supreme Court's reliance (present in both *Discover Bank* and *Gentry*) on the

19  FAA's saving clause, noting that while the "saving clause preserves

20  generally applicable contract defenses, nothing in it suggests an intent to

21  preserve state-law rules that stand as an obstacle to the accomplishment of

22  the FAA's objectives." *Id.* at *17. The U.S. Supreme Court further rejected

23  the rationale (present in both *Discover Bank* and *Gentry*) that such waivers

24  were unenforceable because they were necessary to prosecute low dollar

25  claims, holding "[s]tates cannot require a procedure that is inconsistent with

26  the FAA, even if it is desirable for unrelated reasons." *Id.* at *32. *See also*

27  *Iberia Credit Bureau Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174 (5th

28

Cir. 2004) (upholding class action waiver and rejecting argument of necessity of class action to prosecute low dollar claims).

Prior to *Concepcion*, it was already well established that the terms of an arbitration agreement must be enforced as written, and that any state statute, policy, rule, or doctrine that precludes, obstructs, or frustrates such enforcement is preempted by the FAA. *See, e.g., Doctor's Assocs v. Casarotto*, 517 U.S. 681, 687-89, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (FAA preempted state law that rendered arbitration clauses unenforceable unless clauses had a specific typeface and location in the contract); *Perry*, 482 U.S. at 490-91 (FAA preempted CAL. LAB. CODE § 229, which required "litigants be provided a judicial forum for resolving wage disputes"); *Southland Corp. v. Keating*, 465 U.S. 1, 11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (FAA preempted California statute that precluded waiver of judicial determination); *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 890 (9th Cir. 2001) (FAA preempted California law that voided contract provisions restricting venue to out-of-state fora). Similarly, any attempt to require parties to proceed in arbitration in a manner materially different from the specific terms of the arbitration agreement is precluded by the FAA. *See, e.g., Stolt-Nielsen*, 130 S.Ct. at 1776 (holding party was not required to submit to class arbitration when arbitration agreement was silent on the issue of class arbitration); *Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814, 817-18 (11th Cir. 2001) (same). This is because the specific wording of the parties' arbitration agreement controls, and any attempt to deviate from enforcing the arbitration agreement as written "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress". *Concepcion* 131 S.Ct. 1740, 2011 U.S. LEXIS 3367 at *33. *Accord Bradley*, 275 F.3d at 888-89.

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

FAA preemption of state laws obstructing enforcement of representative action waivers in arbitration agreements is consistent with Congressional intent underlying the FAA. "As the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition'". *Iberia Credit Bureau*, 379 F.3d at 174 (quoting *Gilmer*, 500 U.S. at 31). The "prohibition of class actions…[is] consistent with the goals of 'simplicity, informality, and expedition' touted by the Supreme Court in *Gilmer*." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (upholding a representative action waiver in the defendant company's dispute resolution program).

Pursuant to *Concepcion*, it is clear the *Gentry* rule, like the *Discover Bank* rule, is preempted by the FAA because the *Gentry* rule obstructs the enforcement of arbitration agreements that contain representative action waivers and therefore precludes enforcement of arbitration agreements "according to their terms." *Concepcion*, 131 S.Ct. 1740, 2011 U.S. LEXIS 3367 at *17. Indeed, on May 23, 2011, Judge Fischer held that "[u]nder Concepcion, Gentry is preempted by the FAA as well because its rule derives its meaning from the fact that there is an agreement to arbitrate at issue." *Vitolo v. Bloomingdale's, Inc.*, No. 09-7728, slip op. at 2 (C.D. Cal. May 23, 2011). *Gentry* is preempted because *Concepcion* makes clear the FAA operates to ensure courts and arbitrators enforce the terms of parties' arbitration agreements as written. Courts are to enforce the terms of arbitration agreements as written, "even where 'state substantive or procedural policies' run to the contrary." *Securities Indus. Ass'n v. Connolly*, 883 F.2d 1114, 1123 (1st Cir. 1989) (quoting *Moses H. Cone*, 460 U.S. at 24). *See also Arellano v. T-Mobile USA, Inc.*, No. 10-05663, 2011 U.S. Dist. LEXIS 52142, *6 (N.D. Cal. May 16, 2011) ("*Concepcion*…decided that

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

states cannot refuse to enforce arbitration agreements based on public policy."). Because the *Gentry* rule places limits on the enforcement of representative action waivers in arbitration agreements and does not allow arbitration agreements to be enforced as written, the *Gentry* rule, like the *Discover Bank* rule, stands "'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" and therefore is preempted by the FAA. *Concepcion*, 131 S.Ct. 1740, 2011 U.S. LEXIS 3367 at *33.

Because the FAA preempts the *Discover Bank* rule and *Gentry* rule, there is no impediment to the enforcement of the parties' arbitration agreement as written. Under the express terms of Quevedo's arbitration agreement, Quevedo is precluded from seeking relief on behalf of other employees.[1] Quevedo nevertheless remains free to pursue his claims on his own behalf (including his individual PAGA claim) in arbitration.

## 2. The Arbitration Agreement Covers Quevedo's Individual Claims but Precludes His Representative Claims

Whether a particular dispute falls within the scope of an arbitration agreement is a question for the court to resolve. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). "The question whether the parties have submitted a particular dispute to arbitration" is considered a "question of arbitrability." *Id.* (emphasis removed). As a matter of federal law under the FAA, a "question of arbitrability" presents "an issue for judicial determination [u]nless the parties clearly and unmistakably

---

[1] This includes Quevedo's PAGA claim, which is seeking relief "on behalf of himself or herself and other current or former employees" to recover civil penalties for alleged Labor Code violations. CAL. LAB. CODE § 2699(a).

1  provide otherwise." *Id.* (alteration in original) (internal quotation marks
2  omitted); *see also First Options v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct.
3  1920, 131 L.Ed.2d 985 (1995).

4     The SIS Program specifically provides:

5     Except as otherwise limited, all employment-related legal
6     disputes, controversies or claims arising out of, or relating to,
7     employment or cessation of employment…shall be settled
8     exclusively by final and binding arbitration. Arbitration is
9     administered by the American Arbitration Association
10    ("AAA")….

11 <u>Noeth Decl. Ex. A at p. 17.</u> A court may not deny a party's request to
12 arbitrate an issue "unless it may be said with positive assurance that the
13 arbitration clause is not susceptible of an interpretation that covers the
14 asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation
15 Co.*, 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Chiron
16 Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

17    Quevedo's remaining[2] claims are all related to his employment:
18 recovery of waiting time penalties for failure to receive final paycheck at
19 termination (Count 1); recovery of civil penalties under the Private
20 Attorneys General Act ("PAGA"), CAL. LABOR CODE §2699 (Count 3)[3]; and
21 interest, damages, statutory penalties, punitive damages, attorneys' fees, and
22 costs [Docs. 23, 30]. In addition to the SIS Program's broad arbitration
23 scope, the FAA applies a presumption of arbitrability. *Moses H. Cone*, 460

24

25 [2] Quevedo has abandoned his claim for recovery of penalties under CAL.
26 BUS. & PROF. CODE §§ 17200 *et seq.* (Count 2). *See* Joint Status Report
   [Doc. 50]; Order re: Plaintiff's Motion to Certify Class [Doc. 55].

27 [3] PAGA claims are arbitrable. *See Hill v. Ins. Co. of the West*, 2010 U.S.
28 Dist. LEXIS 40632, *7 (S.D. Cal. Apr. 26, 2010) (holding PAGA claim was
   subject to employee arbitration agreement).

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

U.S. at 24-25. Because Quevedo's remaining claims are all employment-related, the claims fall within the parameters of the SIS Program and are subject to arbitration.

The arbitration agreement's scope only allows Quevedo's individual claims to be submitted to arbitration because (1) the representative action waiver precludes arbitration of representative claims, and (2) arbitration of representative claims cannot be compelled in the absence of an explicit agreement. *Stolt-Nielsen*, 130 S.Ct. at 1774. In *Stolt-Nielsen*, the U.S. Supreme Court highlighted the role of the courts in giving effect to both the contractual limitations and the intent of the parties when determining the scope of an arbitration agreement. *Id.* In particular, the Court noted that "it is also clear from our precedents and the contractual nature of arbitration that parties may specify *with whom* they choose to arbitrate their disputes." *Id.* Thus, the Court held a party cannot be compelled to classwide arbitration under the FAA unless there is a contractual basis for doing so. *Id.* at 1775. Plainly, the parties have agreed to not arbitrate and to waive representative claims. As referenced above, Article 11(f)(ii) of the Plan Document specifically prevents the arbitrator from hearing an arbitration as a representative action. Thus, the parties agreed to arbitrate all employment-related claims, agreed that there would be no arbitration of representative claims, and agreed that the arbitrator has no authority to consider the question of whether a representative action can proceed in arbitration (thereby reserving the issue for judicial determination). Accordingly, arbitration of representative claims is precluded (1) under *Concepcion*, because the parties agreed to arbitrate all employment-related claims but agreed there would be no arbitration of representative claims, and (2) under *Stolt-Nielsen*, because the parties did not explicitly agree to arbitration of representative claims. As such, this Court should enforce the parties'

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

arbitration agreement, dismiss Quevedo's representative claims, and compel Quevedo's remaining individual claims to arbitration.

**D.**   **Federal Courts Have Consistently Held SIS Program Arbitration Is Proper, Valid, and Enforceable, and Have Consistently Compelled Arbitration Pursuant to the SIS Program**

Federal courts across the country have enforced the SIS arbitration agreement, and an order compelling arbitration in this case will be consistent with those decisions. *See, e.g., Hicks v. Macy's Dep't Stores, Inc.*, No. 06-02345, 2006 U.S. Dist. LEXIS 68268 (N.D. Cal. 2006); *Manigault v. Macy's East, LLC*, 318 Fed. Appx. 6 (2d Cir. 2009); *Zekri v. Macy's Retail Holdings, Inc.*, No. 10-1740, 2010 U.S. Dist. LEXIS 119453 (N.D. Ga. 2010); *Rupert v. Macy's, Inc.*, No. 09-2763, 2010 U.S. Dist. LEXIS 54050 (N.D. Ohio 2010); *Hunt v. Macy's Retail Holdings, Inc.*, No. 08-14307, 2009 U.S. Dist. LEXIS 9783 (E.D. Mich. 2009); *Johnson v. Macy's South, LLC*, No. 07-1256, 2007 U.S. Dist. LEXIS 72519 (N.D. Ga. 2007); *Dubois v. Macy's East Inc.*, No. 06-6522, 2007 U.S. Dist. LEXIS 66500 (E.D.N.Y. 2007); *Marley v. Macy's South*, No. 405-227, 2007 U.S. Dist. LEXIS 43891 (S.D. Ga. 2007); *Nguyen v. Federated Dep't Stores, Inc.*, No. 05-0140, 2006 U.S. Dist. LEXIS 2878 (N.D. Ga. 2006).

**E.**   **This Action Should Be Stayed Pending Arbitration**

When a motion to compel arbitration is granted, "the court...shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…" 9 U.S.C. § 3. Because all of Quevedo's remaining claims against Macy's are subject to arbitration, Macy's requests that the parties be ordered to arbitration and that this Court stay the entire action pending the completion of arbitration.

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601

## IV.   CONCLUSION

For the foregoing reasons, Defendant Macy's respectfully requests that the Court enforce the parties' agreement to arbitrate, dismiss Plaintiff Carlos Quevedo's representative claims, compel Quevedo to arbitrate his individual claims, and stay the proceedings until the arbitration is completed.

Dated:  May 25, 2011.             DEFENDANT MACY'S, INC.


By:_____/s/ David E. Martin_____
      David E. Martin, pro hac vice admittee

**PROOF OF SERVICE**

**STATE OF MISOURI, CITY OF ST. LOUIS**

I am employed in the City of St. Louis; I am over the age of 18 years and am not a party to this action.

On the date below I served the following document(s) entitled **NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY CIVIL PROCEEDINGS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

Shaun Setareh, Esq.
LAW OFFICE OF SHAUN SETAREH
9454 Wilshire Blvd., Penthouse Suite #3
Beverly Hills, CA 90212
setarehlaw@sbcglobal.net

Mark R. Thierman
THIERMAN LAW FIRM
7287 Lakeside Dr.
Reno, NV 89511
laborlawyer@pacbell.net

[ ] BY MAIL: By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service with postage thereon fully prepaid in Saint Louis, Missouri, on the same day in the ordinary course of business. I am aware that on motion of the party service, service is presume invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] BY OVERNIGHT COURIER: I caused the above-referenced document(s) to be delivered to _____ for delivery to the above address(s).

[ ] BY FAX: I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

[ ] BY PERSONAL SERVICE: I caused such envelope to be delivered by hand to the offices of the addressee(s).

[..] BY E-MAIL: I transmitted a copy of the foregoing document(s) this date via electronic mail to the e-mail addresses shown above. The document was served electronically and the transmission was reported as complete and without error.

[x] VIA CM/ECF: I transmitted a copy of the foregoing document(s) this date to the parties above by filing the documents with the Court, using the Case Management / Electronic Case Filing (CM/ECF) system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.



Executed on **25 MAY 2011** at St. Louis, Missouri

DAVID KENDALL
Type or Print Name

Signature

LAW OFFICES OF JULIA AZRAEL
5200 LANKERSHIM BOULEVARD, SUITE 850
NORTH HOLLYWOOD, CALIFORNIA 91601