LINK: 61

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|----------|------------------------|------|----------------|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|-------------------------|----------------------|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|-----------------------------------|-----------------------------------|
| None | None |

**Proceedings:**          **(In Chambers)**

**ORDER RE:  DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**I.  INTRODUCTION**

Plaintiff Carlos Quevedo ("Quevedo" or "Plaintiff") brought this putative class action against Macy's, Inc., and Macy's Department Stores, Inc. (collectively, "Macy's" or "Defendants") seeking redress for Macy's failure to timely pay all wages owed upon termination as required by California Labor Code sections 201 and 202.  (See generally Docket No. 23, Second Am. Compl. ("SAC").)  On behalf of himself and other former employees who "were not paid their final wages timely upon separation of employment," Quevedo asserts two causes of action.[1]  (Id. ¶¶ 4, 12–33.)  Specifically, Quevedo asserts a claim for waiting time penalties under Labor Code section 203 for failure to pay wages promptly upon termination in violation of sections 201 and 202 and a claim for civil penalties pursuant to Labor Code section 2699 for those same violations.  (Id. ¶¶ 12–33.)  The Court previously dismissed Quevedo's claims to the extent they relied on alleged section 202 violations based on a failure to timely pay final wages to employees who had resigned.  (Docket No. 30, 7/6/09 Order.)

On March 9, 2011, the Court denied Plaintiff's original motion for class certification.  (Docket No. 55, 3/9/11 Order.)  The Court, however, indicated that Plaintiff could renew his motion for class certification if he redefined the proposed classes to be ascertainable and not fail-

---

[1]  Quevedo's operative complaint also contains a third claim under California's Unfair Competition Law ("UCL"), but Quevedo has since abandoned that claim in light of the California Supreme Court's recent decision in Pineda v. Bank of America, 241 P.3d 870 (Cal. 2010).  (Docket No. 50, Joint Status Report at 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

safe.  (Id. at 9.)  On May 5, 2011, Plaintiff filed a renewed motion for class certification.  (Docket No. 56.)  In opposition to that motion, Defendants argue, among other things, that Plaintiff agreed to arbitrate his claims and thereby waived any right he had to pursue a class or representative action.  (Docket No. 59 at 12–13.)  On May 25, Defendants also filed a motion to compel arbitration.  (Docket No. 61.)  Defendants explain that they did not previously move to compel arbitration because they believed the arbitration agreement was unenforceable because it prohibited the arbitrator from adjudicating claims on a class or collective basis.  (See Docket No. 62, Declaration of Robert Noeth ("Noeth Decl."), Ex. A at 21 [Plan Document § 11(f)(ii)].)  Under two California Supreme Court decisions, such a class action waiver in an arbitration agreement was likely unenforceable.  See Discover Bank v. Superior Court, 113 P.3d 1100, 1110 (Cal. 2005); Gentry v. Superior Court, 165 P.3d 556, 568 (Cal. 2007).  On April 27, 2011, however, the Supreme Court undercut the reasoning of those cases, concluding in AT&T v. Concepcion, 131 S. Ct. 1740 (2011), that California's Discover Bank rule that invalidated certain class arbitration waivers was preempted by the Federal Arbitration Act ("FAA").  Id. at 1753.  In light of the Supreme Court's decision, Defendants concluded for the first time that their arbitration agreement was enforceable and accordingly moved to compel arbitration.

In this Order, the Court considers Macy's motion to compel arbitration.

**II.  FACTS**

Macy's offers a dispute resolution program for employees called "Solutions InSTORE."  (Noeth Decl. ¶ 4.)  The program involves four steps:  (1) the "Open Door" step in which employees bring their concerns to a supervisor or local management team member for informal resolution; (2) review by the Office of Senior Human Resources Management; (3) a request for reconsideration by a panel of peers or by the Office of Solutions InSTORE; and (4) binding arbitration.  (Id. ¶ 9 & Ex. A at 15–17.)  All employees "agree to be covered by Step 4 – Arbitration by accepting or continuing employment with the Company."  (Id., Ex. A at 16.)  However, employees have the option of "exclud[ing] themselves from Arbitration by completing an election form" within 30 days.  (Id.)  A decision to opt-out is confidential and "has no negative effect on [an employee's] employment."  (Id., Ex. A at 17; id., Ex. D at 47.)

A decision at any level is binding on Macy's, and only the employee has a right to appeal each decision to the next step.  (Id. ¶ 11.)  The arbitration agreement covers "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law."  (Id., Ex A at 18.)  The agreement expressly covers all disputes asserted by an employee and all disputes "asserted by the Company against the Associate."  (Id.)  The agreement allows

LINK: 61

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

the arbitrator "to grant any relief, including costs and attorney's fees, that a court could grant." (Id., Ex. A at 22.)  The agreement, however, does not allow the arbitrator "to hear an arbitration as a class or collective action."  (Id., Ex. A at 21.)

An employee who chooses to arbitrate a claim must pay a filing fee equal to the lesser of one day's base pay or $125.  (Id., Ex. A at 22.)  Macy's reimburses legal fees of up to $2,500 over each continuously rolling 12-month period, regardless of the outcome of the proceedings. (Id.)  If the employee does not consult an attorney, Macy's will reimburse the employee for incidental costs up to $500 in a rolling 12-month period.  (Id.)  If the employee decides not to have an attorney present, Macy's also appears without counsel.  (Id., Ex. A at 19.)  The arbitration program provides for some discovery, including 20 interrogatories and three depositions, as well as additional discovery that the arbitrator can permit in her discretion.  (Id., Ex. A at 20.)  The agreement requires employees to initiate arbitration "in accordance with the time limits contained in the applicable law's statute of limitations," and tolls the statute of limitations during the time in which the employee pursues Steps 1–3.  (Id., Ex. A at 19.)  The agreement allows Macy's to alter the Solutions InSTORE rules and procedures, or to cancel the program in its entirety, upon giving thirty days' written notice to employees.  (Id., Ex. A at 23.)

Quevedo was employed by Macy's from July 16, 2008, to October 9, 2008.  (Noeth Decl. ¶ 16.)  On July 11, 2008, Quevedo electronically signed a "Solutions InSTORE New Hire Acknowledgment" indicating that he had "been given information about" the Solutions InSTORE early dispute resolution program.  (Docket No. 63, Declaration of Darby Odendahl ("Odendahl Decl."), Ex. G at 14.)  By signing that form, Quevedo acknowledged that he had "received a copy of the Solutions InSTORE brochure and Plan Document and . . . that [he had] been instructed to review this material carefully."  (Id.)  The form indicated that "I understand that I have 30 days from my date of hire to review this information and postmark my form to the Office of Solutions InSTORE if I wish to exclude myself from coverage under Step 4 of the program, Arbitration" and that "I understand that I am covered by and have agreed to use all 4 steps of Solutions InSTORE automatically by my taking or continuing a job in any part of Macy's, Inc."  (Id.)  The form explained that the employee could "read all about" the program in the brochure and Plan Document, and that an employee could address questions to his Human Resources Representative or the Office of Solutions InSTORE.  (Id.)  The form reiterated that "I understand that if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my election form within 30 days of hire and mailing it to the Office of Solutions InSTORE.  My decision is kept confidential and will not affect my job."  (Id., Ex. G at 14–15.)  Quevedo never returned a form opting out of the arbitration portion of the program.  (Noeth Decl. ¶¶ 28–29.)

LINK: 61

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|----------|----------------------|------|---------------|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

## III.  DISCUSSION

Quevedo first opposes the motion to compel arbitration on the ground that Macy's has waived any rights it has under the arbitration agreement by failing to move for arbitration for over two years after this suit was filed.  Second, Quevedo contends that, even if Macy's has not waived its rights under the arbitration agreement, the arbitration agreement is unenforceable (1) because Quevedo did not assent to it and (2) because the agreement is procedurally and substantively unconscionable.  Finally, Quevedo argues that even if the class claims he asserts are arbitrable, his claims under the Private Attorneys General Act ("PAGA") are not.  The Court addresses each argument in turn.

### A. WAIVER

To determine whether a party has waived its right to arbitration, a court can consider:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1124 (9th Cir. 2008) (quoting St. Agnes Med. Ctr. v. PacifiCare of Cal., 82 P.3d 727, 733 (Cal. 2003)).[2]  The waiver inquiry "must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." Id. at 1125 (quoting Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)).

---

[2]  Other Ninth Circuit cases cite a three-factor test that looks to "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Fisher, 791 F.2d at 694; Samson v. NAMA Holdings, LLC, 637 F.3d 915, 934 (9th Cir. 2011) (citing Fisher); Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1187 (9th Cir. 1986) (same).  The Ninth Circuit has made clear, however, that whether rights under a contract have been waived is a question of state law. Cox, 533 F.3d at 1121.  The five-factor test cited in Cox governs whether a party has waived its rights under a contract governed by California law. Id. at 1124 & n.7.

LINK: 61

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

"Because waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." Fisher, 791 F.2d at 694 (internal quotations omitted); see also Sobremonte v. Superior Court (Bank of Am. Nat'l Trust and Sav. Ass'n), 72 Cal. Rptr. 2d 43, 50 (Ct. App. 1998). The Court considers the six Cox factors in turn.

### 1. WHETHER MACY'S TOOK ACTIONS INCONSISTENT WITH THE RIGHT TO ARBITRATE

To be sure, Macy's defended this case for over two years without moving to assert its rights under the arbitration agreement. Nonetheless, the Court concludes that these actions were not inconsistent with the right to arbitrate and do not evidence any intent by Macy's to waive its rights under the arbitration agreement.

The Ninth Circuit has held that a party does not act inconsistently with the right to arbitrate by failing to seek to enforce an arbitration agreement that would be unenforceable under existing law. See Letizia, 802 F.2d at 1187; Fisher, 791 F.2d at 697. In Letizia and Fisher, defendants moved to compel arbitration after suits had been pending for some time. Letizia, 802 F.2d at 1186; Fisher, 791 F.2d at 693. In both cases, the defendants had not sought to enforce arbitration agreements because of the so-called "intertwining doctrine," which barred a party from compelling arbitration of arbitrable claims if they were factually intertwined with non-arbitrable claims. Letizia, 802 F.2d at 1186–87; Fisher, 791 F.2d at 695. While those cases were pending, the Supreme Court rejected the intertwining doctrine in a 1985 case, and the defendants promptly moved to compel arbitration of their arbitrable claims. Letizia, 802 F.2d at 1186, 1187 n.3; Fisher, 791 F.2d at 697. The Circuit concluded that because there was no existing right to arbitration until that 1985 Supreme Court decision, the defendants had not acted inconsistently with the right to arbitrate by failing to seek to enforce their arbitration agreements before that change in law. Letizia, 802 F.2d at 1187; Fisher, 791 F.2d at 697.

This case presents a similar scenario. At the time this case was filed in March 2009, and until the Supreme Court announced its decision in AT&T v. Concepcion on April 27, 2011, California law made class action bans in arbitration agreements unenforceable. In particular, in Gentry v. Superior Court, the California Supreme Court had held that class arbitration waivers are unenforceable where a court concludes "that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of [wage and hour] laws for the employees alleged to be affected by the employer's violations." Gentry, 165 P.3d at 568. In such circumstances, the class arbitration waiver should be "severed and the rest of the arbitration agreement enforced." Id. at 570. The decision in Gentry was based on and "clarified" the California Supreme Court's

LINK: 61

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|----------|-----------------------|------|---------------|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

earlier decision in <u>Discover Bank</u>, 113 P.3d at 1103, which held that "under some circumstances, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable" as unconscionable. <u>Gentry</u>, 165 P.3d at 560.

In light of <u>Gentry</u>, Macy's reasonably concluded that it could not enforce the class action waiver in its arbitration agreement.[3] <u>Accord</u> <u>Nancy Vitolo et al. v. Bloomingdale's, Inc., et al.</u>, No. CV 09-7728, Order at *2 (C.D. Cal. Mar. 22, 2011) (concluding that, in light of <u>Gentry</u>, a defendant "had a good faith basis" to believe that "it would have been futile to bring a motion to compel arbitration at the outset of [an] action because the arbitration agreement was not enforceable under California law due to its class action waiver"). Having reached that conclusion, Macy's reasonably decided not to assert the rights that remained under that agreement. A right to defend against <u>an individual's</u> claims in arbitration meaningfully differs from a right to defend against <u>class and collective</u> claims in arbitration. As the Supreme Court noted in <u>AT&T v. Concepcion</u>, "class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." <u>Concepcion</u>, 131 S. Ct. at 1751. In addition, "class arbitration greatly increases risks to defendants," as "[t]he absence of multilayered review makes it more likely that errors will go uncorrected." <u>Id.</u> at 1725. In light of these disadvantages of class arbitration, it is no surprise that Macy's declined to enforce its arbitration agreement, reasonably believing that, under <u>Gentry</u>, it would have to arbitrate Quevedo's claims on a class basis. If Macy's waived any right, it was the right to defend against Quevedo's class and collective claims in arbitration. Because Macy's did not believe that it had the option to defend against Quevedo's <u>individual</u> claims in arbitration, its failure to seek to enforce the arbitration agreement did not reflect any intent to forego that option.

---

[3] The Court recognizes that Macy's could have moved to compel arbitration and then argued that the <u>Gentry</u> rule was preempted by the Federal Arbitration Act ("FAA"). Although the California Supreme Court had ruled that refusing to enforce class arbitration waivers did not violate the FAA, <u>Gentry</u>, 165 P.3d at 569, that decision was not binding on this Court, as it is a question of federal law. <u>See</u> <u>Local Union 598, Plumbers & Pipefitters Indus. Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co.</u>, 846 F.2d 1213, 1218 (9th Cir. 1988) ("Preemption is a question of federal law . . . ."); <u>United States v. Nev. Tax Comm'n</u>, 439 F.2d 435, 439 (9th Cir. 1971) (noting that "decisions of the states are not binding" on "question[s] of federal law"). Nevertheless, Macy's was not required, as a condition to preserving its right to arbitrate, to challenge the <u>Gentry</u> rule in a motion to compel arbitration. Plaintiff cites no authority suggesting that a party must make all possible challenges to an existing law or risk waiving any rights it might have if that law is someday invalidated. It was reasonable for Macy's to believe that the <u>Gentry</u> rule would be enforced in this Court, and its failure to seek to invalidate that rule did not evidence an intent to forego any rights it would have if <u>Gentry</u> were overruled.

LINK: 61

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

On April 27, 2011, the Supreme Court held that California's "Discover Bank rule" was preempted by the Federal Arbitration Act ("FAA") and thus that class action waivers in arbitration agreements are enforceable. Concepcion, 131 S. Ct. at 1753. Only at this point did it become clear that Macy's had the right to enforce its arbitration agreement as written and to defend against Quevedo's claims in arbitration on an individual basis. Less than a month later, it sought to enforce that right by filing a motion to compel arbitration. Because Macy's promptly moved to enforce its arbitration agreement as soon as it became clear that the agreement could be enforced as written, its earlier failure to seek to enforce its partially-unenforceable agreement did not reflect an intent to forego the right to seek arbitration. Because Macy's actions were not inconsistent with the right to arbitrate, this factor suggests that Macy's did not waive its rights under the arbitration agreement.

**2. WHETHER THE LITIGATION MACHINERY HAS BEEN SUBSTANTIALLY INVOKED**

In this case, the Court has entertained a motion to dismiss by Defendants and a motion for class certification by Plaintiff, and some discovery has occurred. (Docket Nos. 24, 30, 44, 55.) The litigation has been pending for over two years, but the case was stayed for nearly a year while the Court awaited a California Supreme Court decision relevant to one of Plaintiff's claims. (See Docket Nos. 49, 53.) The Court doubts that this qualifies as "substantially invok[ing]" the district court's litigation machinery. Cf. Law Offices of Dixon R. Howell v. Valley, 29 Cal. Rptr. 3d 499, 516 (Ct. App. 2005) (finding that the litigation machinery had been "substantially invoked" where "the parties engaged in discovery, submitted the case to judicial arbitration, had the court consider Law Firm's summary judgment motion, participated in a mandatory settlement conference, and allowed the case to proceed to the brink of trial"). Even if it did, Macy's has not invoked the litigation machinery beyond the minimum required to defend against the suit. Given that it reasonably believed that it did not have the right to enforce its arbitration agreement as written before now, its relatively limited use of the judicial process will not be held against it.

**3. WHETHER MACY'S DELAYED FOR A LONG PERIOD BEFORE SEEKING A STAY**

To be sure, Macy's delayed over two years in moving to compel arbitration. Nonetheless, the Court concludes that, in the circumstances of this case, this delay does not support a finding of waiver because Macy's reasonably believed that it had no right to enforce its arbitration agreement as written until the Supreme Court decided AT&T v. Concepcion in April 2011. Given that Macy's promptly sought to compel arbitration agreement as soon as it realized that the agreement was enforceable in full, its delay in moving to compel arbitration does not reflect an intent to waive its rights under the agreement.

LINK: 61

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|----------|------------------------|------|---------------|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

### 4.  WHETHER MACY'S FILED A COUNTERCLAIM WITHOUT SEEKING A STAY

Macy's has not filed a counterclaim.  This factor therefore does not support finding waiver.

### 5.  WHETHER IMPORTANT INTERVENING STEPS HAVE TAKEN PLACE

The fifth factor looks to whether "important intervening steps" such as "taking advantage of judicial discovery procedures not available in arbitration" have taken place.  Cox, 533 F.3d at 1124.  Although discovery has taken place in this case, Macy's has only responded to discovery requests and has not propounded any discovery requests itself.  (Reply at 2.)  Thus, Macy's has not unfairly benefitted from discovery procedures that would not have been available to it had it moved to compel arbitration at an earlier point.  Moreover, to the extent that the motions practice and discovery that have taken place do qualify as "important intervening steps," the Court concludes that they do not support a finding of waiver for the same reason that the delay does not support a finding of waiver.  Even if important intervening steps have taken place, Macy's did not simply stand idly by while allowing them to occur.  Rather, Macy's participated in the litigation and allowed "important . . . steps" to take place only because it reasonably believed that it had no meaningful alternative given that its arbitration agreement was not enforceable as written.  The Court accordingly concludes that this factor also does not support a finding of waiver.

### 6.  WHETHER THE DELAY HAS PREJUDICED QUEVEDO

Under California law, "courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses."  St. Agnes Med. Ctr., 82 P.3d at 738.  Rather, "[p]rejudice typically is found only where the petitioning party's conduct has substantially undermined th[e] important public policy [in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration."  Id.  Thus, for example, prejudice exists "where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration; where a party unduly delayed and waited until the eve of trial to seek arbitration; or where the lengthy delays associated with the petitioning party's attempts to litigate resulted in lost evidence "  Id. (citations omitted).

Quevedo has not shown prejudice of this sort.  As noted above, Macy's has not propounded any discovery requests in this case and thus has not unfairly gained information it

LINK: 61

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

could not have gained in arbitration. Its delay in seeking arbitration was not "undue": It delayed moving to compel arbitration only until it became apparent that it could enforce the arbitration agreement in full. Moreover, there is no indication that the delay resulted in any lost evidence. Quevedo contends that he "has invested significant time and resources in prosecuting this action in federal court" and that the delay has prevented him from taking advantage "of any of the highly touted efficiencies of arbitration—i.e., quick results and low costs." (Opp. at 5.) The legal expenses that Quevedo has incurred do not suffice to show prejudice. St Agnes Med. Ctr., 82 P.3d at 738. Moreover, the Ninth Circuit has rejected a similar argument, concluding that such a "wound is self-inflicted." Fisher, 791 F.2d at 698. Quevedo, like the plaintiffs in Fisher, chose to pursue his claims in court rather than in the arbitral forum and "[a]ny extra expense incurred as a result of the . . . deliberate choice of [that] forum, in contravention of their contract, cannot be charged to [the defendant]." Id. Similarly, any loss of the opportunity to benefit fully from arbitration's advantages results from Quevedo's own choice to bring his claims in court. The Court accordingly concludes that Quevedo has not demonstrated any prejudice that would support a finding of waiver.

For these reasons, applying the six-factor test set forth in Cox, the Court concludes that Quevedo has not met his "heavy burden" to show that Macy's waived its rights under the arbitration agreement. Because Macy's has not waived its right to enforce its arbitration agreement, the Court proceeds to consider the motion to compel arbitration on the merits.

**B. ENFORCEABILITY**

On the merits, Plaintiff contends that Macy's motion must be denied because the arbitration agreement is unenforceable. In particular, Plaintiff contends that the agreement cannot be enforced because he never assented to it and because it is procedurally and substantively unconscionable. The Court addresses each argument in turn.

**1. ASSENT**

The threshold issue in deciding a motion to compel arbitration is "whether the parties agreed to arbitrate." Van Ness Townhouses v. Mar Indus. Corp., 862 F.2d 754, 756 (9th Cir. 1988). Courts must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996). Under California contract law, a valid contract exists

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

only if the parties consent.  United States ex rel. Oliver v. Parsons Co., 195 F.3d 457, 462 (9th Cir. 1999).

        Here, Quevedo did not expressly assent to arbitrate any disputes with his employer.  But that is not dispositive on the question of whether he agreed to be bound by the arbitration provisions of his employment agreement.  Quevedo was given materials describing in detail Macy's "Solutions InSTORE" dispute resolution program, which includes arbitration.  (Noeth Decl. ¶ 8 & Ex. A at 15.)  The plan materials expressly state that "[a]ll Associates agree to be covered by Step 4–Arbitration by accepting or continuing employment with the Company after the Effective Date.  Associates are given the option to exclude themselves from Arbitration by completing an election form within the prescribed time frame.  Until and unless an Associate elects to be excluded from arbitration within the prescribed time frame, the Associate is covered by Step 4–Arbitration."  (Id., Ex. A at 16.)  Quevedo never returned a form opting out of arbitration.  The Court thus must determine whether Quevedo's failure to opt out amounted to assent to the arbitration agreement.

        In general, "silence or inaction does not constitute acceptance of an offer."  Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1109 (9th Cir. 2002) (quoting Golden Eagle Ins. Co. v. Foremost Ins. Co., 25 Cal. Rptr. 2d 242, 251 (Ct. App. 1993)).  "However, 'where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent.'"  Id. (quoting Beatty Safway Scaffold, Inc. v. Skrable, 4 Cal. Rptr. 543, 546 (Ct. App. 1960)).  Applying this test, the Ninth Circuit has concluded that an employee assented to an arbitration agreement by failing to opt out of it where he had signed an acknowledgment form that "clearly set out in writing the significance of his failure to opt out and described in detail the mechanism by which he could express his disagreement."  Id.  There, the employer "communicated in detail and in writing the effect of [the employee's] acceptance on his right to bring claims against his employer" and "made clear that opting out of the agreement would have no effect on the employment relationship."  Id.  The employer also gave the employee "[t]he explicit opportunity to review the agreement with an attorney," which highlighted the legal effect of the agreement.  Id.  Finally, the employer gave the employee "thirty days to review the agreement and mull over whether to opt out of it."  Id.  In those circumstances, the Circuit concluded that "inaction [was] indistinguishable from overt acceptance" and that employee "assented to the [arbitration agreement] by failing to exercise his right to opt out of the program."  Id.

        The situation here is indistinguishable.  Macy's provided Quevedo with detailed information in writing that described the Solutions InSTORE program, including the arbitration step.  (Noeth Decl., Exs. A, B.)  Quevedo signed an acknowledgment form indicating that "I

LINK: 61

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|----------|------------------------|------|----------------|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

understand that I have 30 days from my date of hire to review this information and postmark my
form to the Office of Solutions InSTORE if I wish to exclude myself from coverage under Step 4
of the program, Arbitration." (Id., Ex. D.) The acknowledgment form also stated that "I
understand that I am covered by and have agreed to use all 4 steps of Solutions InSTORE
automatically by taking or continuing a job in any part of Macy's, Inc." and reiterated that "I
understand that if I do not wish to be covered by Step 4, Arbitration, the only way to notify the
Company about my choice is by postmarking my election form within 30 days of hire and
mailing it to the Office of Solutions InSTORE." (Id.) The form provided information about
where Quevedo could direct questions and made clear that disputes would be resolved in
arbitration "instead of by a judge or jury in a court proceeding." (Id.) The acknowledgment also
made clear that the decision whether to opt out would be "kept confidential and will not affect
my job." (Id.) These facts are indistinguishable from the circumstances in Najd, and the Court
accordingly concludes that, like the employee in that case, Quevedo assented to the arbitration
agreement by failing to exercise his right to opt out of the program. This conclusion is in accord
with another district court case that followed Najd to hold that a failure to opt out of the same
Macy's program at issue here constituted an assent to the Macy's arbitration agreement.
See Hicks v. Macy's Dep't Stores, Inc., No. 06-2345, 2006 WL 2595941, at *2–3 (N.D. Cal.
Sept. 11, 2006).

Quevedo makes no attempt to distinguish this case from Najd and instead cites two cases
purportedly showing that the acknowledgment form could not bind him to an arbitration
agreement. The cases Quevedo cites do not apply, however. In Nelson v. Cyprus Gagdad
Copper Corp., the Ninth Circuit held only that signing a form acknowledging receipt of an
employee Handbook did not amount to assent to an arbitration agreement where the
acknowledgment form did not mention the existence of an arbitration clause in the Handbook or
notify the employee that the acceptance of the Handbook constituted an agreement to arbitrate.
Nelson v. Cyprus Gagdad Copper Corp., 119 F.3d 756, 761 (9th Cir. 1997). There, unlike here,
"nothing in the acknowledgment form notified [the employee] that by agreeing to 'read and
understand' [the Handbook,] he was additionally agreeing to waive any rights or remedies." Id.
The second case that Quevedo cites—Metters v. Ralphs Grocery Co.—establishes only that a
party does not assent to a contract "when the writing does not appear to be a contract and the
terms are not called to the attention of the recipient." Metters v. Ralphs Grocery Co., 74 Cal.
Rptr. 3d 210, 213 (Ct. App. 2008). The acknowledgment form that Quevedo electronically
signed called the terms of the agreement to Quevedo's attention. The form, which is in normal-
sized font covering less than two pages, mentions the 30-day opt-out requirement twice and
additionally states, "I understand that I am covered by and have agreed to use all 4 steps of
Solutions InSTORE automatically by my taking or continuing a job in any part of Macy's, Inc."

LINK: 61

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

(Noeth Decl., Ex. D.)  The arbitration agreement is far from hidden in the Macy's acknowledgment form.

For these reasons, the Court concludes that Quevedo assented to the arbitration agreement.

### 2. UNCONSCIONABILITY

Under the Federal Arbitration Act, "written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686 (1996) (quoting 9 U.S.C. § 2) (emphasis added by Doctor's Assocs.).  Under this provision, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." Id. at 687.  Under generally applicable California law, "courts may refuse to enforce an unconscionable arbitration agreement." Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003).  "Unconscionability refers to 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" Id. (quoting A & M Produce Co. v. FMC Corp., 186 Cal. Rptr. 114 (1982)).  A contract "is unenforceable under the doctrine of unconscionability when there is both a procedural and substantive element of unconscionability." Id. (internal quotations omitted).  "[P]rocedural and substantive unconscionability 'need not be present in the same degree,'" and courts should use a "sliding scale" approach when evaluating an agreement's unconscionability. Id. (quoting Armendariz v. Found. Health Psychcare Servs., Inc. 6 P.3d 669, 690 (Cal. 2000)).  Thus, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. at 1171 (quoting Armendariz, 6 P.3d at 690).   "[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." Gentry, 165 P.3d at 572.

The Court evaluates the arbitration agreement's procedural and substantive unconscionability in turn.

#### a. Procedural Unconscionability

In assessing procedural unconscionability, a "court must examine 'the manner in which the contract was negotiated and the circumstances of the parties at that time.'" Ingle, 328 F.3d at 1171 (quoting Kinney v. United Healthcare Servs., Inc., 83 Cal. Rptr. 2d 348, 352–53 (Ct. App.

LINK: 61

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|----------|----------------------|------|---------------|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

1999)).  The California Supreme Court has recognized that "there are degrees of procedural unconscionability."  <u>Gentry</u>, 165 P.3d at 572.  More specifically:

> At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability.  Although certain terms in these contracts may be construed strictly, courts will not find these contracts substantively unconscionable, no matter how one-sided the terms appear to be.  Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum.  Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching.

<u>Id.</u> at 572–73 (internal quotations and citations omitted).

     In <u>Gentry</u>, the California Supreme Court held that an agreement like that here "was, at the very least, not entirely free from procedural unconscionability."  <u>Id.</u> at 574.  In <u>Gentry</u>, as here, an employee was informed of an arbitration agreement and given 30 days to opt out.  <u>Id.</u> at 560.  In <u>Gentry</u>, the California Supreme Court concluded that the agreement was procedurally unconscionable (1) because "the explanation of the benefits of arbitration [in the employee materials] was markedly one-sided," such that "only a legally sophisticated party would have understood that the[] [arbitration] rules and procedures are considerably less favorable to an employee than those operating in a judicial forum" and (2) because it appeared likely "that employees felt at least some pressure not to opt out of the arbitration agreement," given that the materials "made unmistakably clear that [the employer] preferred that the employee participate in the arbitration program."  <u>Id.</u> at 573–74.  In reaching this conclusion, the court rejected as unpersuasive two Ninth Circuit cases that came to a contrary conclusion, <u>Najd</u>, 294 F.3d 1104, and <u>Circuit City Stores, Inc. v. Ahmed</u>, 283 F.3d 1198, 1199–1200 (9th Cir. 2002).  <u>Gentry</u>, 165 P.3d at 574 n.10.  The court noted that those cases "did not consider the concealment of disadvantageous terms nor the reality that [the employer] clearly favored arbitration and was in a position to pressure employees to choose its favored option."  <u>Id.</u>  State law, not federal general common law, governs general contract principles regarding the enforceability of contracts.  <u>Douglas v. U.S. Dist. Court for the Central Dist. of Cal.</u>, 495 F.3d 1062, 1067 n.2 (9th Cir. 2007).  Thus, the California Supreme Court decision—not the Ninth Circuit decisions—is binding.  <u>See Wainwright v. Goode</u>, 464 U.S. 78, 84 (1983) ("[T]he views of the state's highest court with respect to state law are binding on the federal courts.").

LINK: 61

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

The arbitration agreement at issue here, like the agreement in <u>Gentry</u>, contains a one-sided explanation of the benefits of arbitration and makes unmistakably clear that Macy's prefers that employees participate in the arbitration program. The Solutions InSTORE brochure describes arbitration as "a lot like a court proceeding, but . . . less formal, less time-consuming and less expensive." (Noeth Decl., Ex. B at 31 [Solutions InSTORE Brochure].) The brochure states that "[t]he same remedies are available to you as in a court of law" but that arbitration offers "several other advantages and benefits." (<u>Id.</u>) The brochure provides a chart comparing arbitration to courts that explains that "[a]n independent arbitrator from outside the Company, specially qualified to hear employment related disputes" hears claims in arbitration, while "[a] judge who may not specialize in employment law or [a] jury who is completely unfamiliar with and has no specific training in employment law" hears claims in court. (<u>Id.</u>) The chart also explains that "you will be able to have a final resolution much faster" in arbitration, as "[m]ost arbitration processes take less than 12 months to complete," while "[n]ationwide, employment cases [in court] often last from 1 to 5 years, depending on the facts." (<u>Id.</u>) The chart further notes that the filing fee for arbitration is at most $125, while the filing fee in federal court is $350, plus additional fees for appeals, and the filing fee in state courts can be $150 or more. (<u>Id.</u>) The chart also indicates that employees "can receive up to $2,500 per rolling calendar year" in arbitration for legal fees, while bringing claims in court provides no "legal financial benefit." (<u>Id.</u>) Finally, the chart explains that employees are not required to have an attorney in arbitration but can have one if they want. (<u>Id.</u>) "The tone of an Arbitration proceeding is much less formal than a court of law," and "the legal system is much more formal and complex, often requiring you to obtain legal representation to manage through the system." (<u>Id.</u>)

These descriptions give a one-side view of the benefits of arbitration and do not alert employees to the potential drawbacks of foregoing the rights available in federal court to a jury trial, to more extensive discovery, and to appeal. <u>See</u> <u>Armendariz</u>, 6 P.3d at 690 (identifying "waiver of a right to a jury trial, limited discovery, and limited judicial review" as "potential disadvantages" of arbitration). To be sure, the program documents here do not omit as much information as the materials in <u>Gentry</u>, which failed to disclose disadvantages specific to that particular arbitration program, such as shortened statutes of limitations, limitation of remedies, and limitation on availability of attorneys' fee awards. <u>See</u> <u>Gentry</u>, 165 P.3d at 573–74 (explaining that the materials "did not mention any of the additional significant disadvantages that <u>this particular arbitration agreement</u> had compared to litigation" (emphasis in original)). This distinction, however, stems from the fact that the arbitration program in <u>Gentry</u> had several disadvantages that the Macy's program does not share. This means only that the substantive program in this case is less one-sided; it does not mean that the <u>portrayal</u> of the program is any less one-sided. Macy's portrayal of its program, like the portrayal of the program in <u>Gentry</u>, discloses only the advantages without drawing any attention to the disadvantages of arbitration.

LINK: 61

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

The Macy's materials, like the materials in <u>Gentry</u>, also make unmistakably clear that Macy's prefers that employees participate in the arbitration program.  Like the materials in <u>Gentry</u>, the materials here tout the virtues of the arbitration program.  (Noeth Decl., Ex. B at 31–31.)  The comparison chart outlined above reflects a clear preference for arbitration, as does a second comparison chart that highlights the shorter "length[s] of time to final hearing," lower "company cost[s]," and lower "employee cost[s]" of arbitration.  (<u>Id.</u>, Ex. B at 32.)  The second comparison chart also states that "[a]rbitration can provide better access to justice for individual employee claims that are not economical for an attorney to take to court" and that "[a]rbitration is faster, cheaper and more satisfying for parties than traditional litigation."  (<u>Id.</u>)  These materials "left no doubt about [Macy's] preference."  <u>See</u> <u>Gentry</u>, 165 P.3d at 574.  And, as in <u>Gentry</u>, "[t]he fact that the arbitration agreement was structured so that arbitration was the default dispute resolution procedure from which the employee had to opt out underscored [Macy's] pro-arbitration stance."  <u>Id.</u>  "Given the inequality between employer and employee and the economic power that the former wields over the latter, it is likely that . . . employees felt at least some pressure not to opt out of the arbitration agreement."  <u>Id.</u> (citation omitted).  Even though the materials emphasize that "the decision is yours" and make clear that the choice to opt out will be "confidential" and will have "no negative effect on your employment" (Noeth Decl., Ex. B at 31, 36; Ex. D at 47), it is unlikely that this would completely dispel the pressure employees might feel not to opt out, given Macy's clear preference.

For these reasons, the Macy's agreement and materials resemble the agreement and materials in <u>Gentry</u> in that they both lack material information about the disadvantages of the arbitration program and present a likelihood that employees felt at least some pressure not to opt out.  <u>See</u> <u>Gentry</u>, 165 P.3d at 574.  Thus, like the agreement in <u>Gentry</u>, the arbitration agreement at issue here is "at the very least, not entirely free from procedural unconscionability."  <u>Id.</u>  Nonetheless, the degree of procedural unconscionability is small.  The California Supreme Court hinted as much in <u>Gentry</u>, where it described the agreement as "not entirely free from procedural unconscionability" and as presenting "some degree of procedural unconscionability."  <u>Id.</u>  Because the degree of procedural unconscionability is relatively low, a greater showing of substantive unconscionability will be required to render the agreement unenforceable.  <u>See</u> <u>Ingle</u>, 328 F.3d at 1171.

### b.  *Substantive Unconscionability*

"Substantive unconscionability centers on the 'terms of the agreement and whether those terms are so one-sided as to shock the conscience.'"  <u>Ingle</u>, 328 F.3d at 1172 (quoting <u>Kinney</u>, 83 Cal. Rptr. 2d 348 (Ct. App. 1999)).  Quevedo claims that the Macy's arbitration program is substantively unconscionable for two reasons:  (1) the agreement gives Macy's the authority

LINK: 61

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|----------|----------------------|------|---------------|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

unilaterally to cancel or modify the program, and (2) by requiring employees to pursue three preliminary steps before submitting a claim to arbitration, the program unfairly gives the employer a "free peek" at an employee's case.  (Opp. at 14–17.)  The Court finds these arguments unpersuasive.

### i.  Unilateral Right to Cancel or Modify

The Solutions InSTORE program allows Macy's to alter the program's rules and procedures or to cancel the program upon giving employees thirty days' written notice.  (Noeth Decl., Ex. A at 23.)  Under binding case law, this provision is substantively unconscionable.  The Ninth Circuit has held that such a provision affording an employer "the unilateral power to terminate or modify the [arbitration] contract is substantively unconscionable."  Ingle, 328 F.3d at 1179.  The Ninth Circuit, however, expressly "dr[e]w no conclusion as to whether this term, by itself, renders the contract unenforceable."  Id. at 1179 n.23.

The Court does not decide here whether this provision, without more, is so substantively unconscionable as to be unenforceable.  Even if this provision were itself unenforceable, the Court would merely sever it.  "Under California law, courts have discretion to sever an unconscionable provision or refuse to enforce the contract in its entirety."  Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 895 (9th Cir. 2002).  In determining whether to sever an unenforceable provision or to invalidate a contract in its entirety, courts must "look to the various purposes of the contract.  If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.  If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate."  Id. (quoting Armendariz, 6 P.3d at 696).  Here, the provision regarding cancellation or modification is collateral to the main purpose of the agreement and can be extirpated.  Thus, were the Court to find this provision unenforceable, it would simply sever it.  That provision, however, is not actually at issue here because Macy's did not invoke it and Quevedo does not challenge its application.  The Court therefore need not and does not decide whether that provision is unenforceable.  It is enough to conclude that, even if it is unenforceable, it does not render the rest of the agreement unenforceable.

### ii.  Preliminary Steps

Contrary to Macy's contention, the Solutions InSTORE program also appears to require employees to pursue three preliminary steps before submitting a claim to arbitration.  Macy's contends that Steps 1–3 of the program are only optional, and that the employee can proceed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|----------|----------------------|------|---------------|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

immediately to arbitration if he chooses.  (Reply at 10.)  Macy's, however, cites no evidence in
support of this proposition other than a general statement by a Macy's Vice President that "[t]he
employee drives the process."  (Noeth Decl. ¶ 11.)  Although the Plan Document and brochure
do not explicitly make Steps 1–3 mandatory, they strongly suggest that an employee must go
through those steps before submitting a claim to arbitration.  (See generally Noeth Decl., Exs. A,
B.)  The Plan Document indicates that an employee can request arbitration "[i]n those relatively
rare situations that, for whatever reason, your dispute cannot be resolved at Step 3."  (Id., Ex. A
at 15.)  The document also notes that employees agree "to arbitrate any and all disputes . . . not
resolved at Step 3."  (Id., Ex. A at 17.)  The document explains that "[i]f the panel [at Step 3]
denies the Associate's claim, the Company will let the Associate know the procedures for
continuing on to Step 4."  (Id.)  The program brochure refers to taking disputes "all the way to
Step 4 " and informs employees that they decide "whether to accept the outcome of each step or
move to the next one."  (Id., Ex. B. at 27, 28.)  The brochure also repeatedly indicates that  an
employee "may proceed to Step 4 " if "you are not satisfied with the decision [at Step 3]," "[i]f
you receive a decision for your Step 3 claim that you are still not satisfied with," "[i]f you are
not satisfied with the results of this process," and "[i]f you are not satisfied with the results of
Step 3."  (Id., Ex. B at 30, 31.)  All these statements at least strongly suggest that the first three
steps of the process are mandatory, and that arbitration is available only after the employee
completes Step 3.

        There is some authority under California law indicating that the requirement that an
employee pursue the three preliminary steps before submitting a claim to arbitration is
substantively unconscionable.  In Nyulassy v. Lockheed Martin Corp., the California Court of
Appeal found an employment arbitration agreement substantively unconscionable where, among
other things, it required employees "to submit to discussions with [their] supervisors in advance
of, and as a condition precedent to, having [their] dispute[s] resolved through binding
arbitration."  Nyulassy v. Lockheed Martin Corp., 16 Cal. Rptr. 3d 296, 307–08 (Ct. App. 2004).
The court explained:

                While on its face, this provision may present a laudable mechanism for resolving
                employment disputes informally, it connotes a less benign goal. Given the
                unilateral nature of the arbitration agreement, requiring plaintiff to submit to an
                employer-controlled dispute resolution mechanism (i.e., one without a neutral
                mediator) suggests that defendant would receive a "free peek" at plaintiff's case,
                thereby obtaining an advantage if and when plaintiff were to later demand
                arbitration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

Id. at 307.  In that case, the court did not hold that that provision of agreement, considered alone, was substantively unconscionable.  See id. at 307–08.  Rather, the court concluded that this provision, a provision requiring <u>only</u> employees, and not the employer, to submit claims to arbitration, and a provision shortening the statute of limitations, "<u>taken together</u>, . . . render[ed] [the arbitration agreement] substantively unconscionable."  Id. (emphasis added).  In concluding that the agreement was so unconscionable as to be unenforceable, the court noted that the provision "impos[ing] on the employee only a unilateral obligation to arbitrate" was "[o]f the greatest overall significance."  Id. at 311.

Because <u>Nyulassy</u> involved terms not present in this case, it is difficult to discern how it may apply in these circumstances.  Nevertheless, the Court will assume for purposes of this discussion that the (apparent) requirement that employees pursue three preliminary steps before submitting a claim to arbitration is substantively unconscionable.  Even so, <u>Nyulassy</u> does not indicate that such a requirement, standing alone, renders an arbitration agreement so substantively unconscionable as to be unenforceable when combined with a relatively minimal level of procedural unconscionability.  Rather, <u>Nyulassy</u> emphasized the unilateral nature of the arbitration requirement in finding that agreement unenforceable.  Unlike that agreement, the Macy's agreement here is not unilateral and expressly provides that "[a]rbitration shall apply to any and all such civil disputes, controversies or claims asserted by the Company against the Associate." (Noeth Decl., Ex. B at 37.)  Given the mutuality of the Macy's agreement, the Court does not find that the preliminary-steps requirement, taken alone or in combination with Macy's unilateral right to terminate or modify the agreement, renders the agreement so substantively unconscionable as to be unenforceable, particularly in light of the relatively low level of procedural unconscionability present in this case.

Because the agreement is valid and enforceable, and because Macy's has not waived its right to seek arbitration, the motion to compel arbitration is **GRANTED**.

**C.  WHETHER THE PAGA CLAIM IS ARBITRABLE**

As a final matter, Quevedo argues that his claim under the Private Attorneys General Act ("PAGA") is not arbitrable and therefore must proceed in this forum.  (Opp. at 17–19.)  Under PAGA, "an aggrieved employee" can bring a civil action "on behalf of himself or herself and other current or former employees" to recover civil penalties for Labor Code violations.  Cal. Labor Code § 2699(a).  California law establishes civil penalties of $100 "for each aggrieved employee per pay period for the initial violation" and $200 "for each aggrieved employee per pay period for each subsequent violation."  Id. § 2699(f).  When a employee sues under PAGA, he acts "as the proxy or agent of the state's labor law enforcement agencies" to "supplement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|----------|----------------------|------|---------------|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves." <u>Arias v. Superior Court</u>, 209 P.3d 923, 933 (Cal. 2009). In light of this, Quevedo argues that "[b]ecause Macy's contends that Mr. Quevedo is barred from pursuing his PAGA claim in arbitration, sending the PAGA claim to arbitration would irreparably frustrate the purpose of PAGA and prevent Mr. Quevedo from fulfilling the Legislature's mandate that he be deputized as an attorney general to remedy labor law abuses in the state of California." (Opp. at 19.)

The Court disagrees. At the outset, Quevedo's PAGA claim is plainly arbitrable to the extent that he asserts it only on his own behalf. The PAGA claim seeks civil penalties for Macy's alleged failure to pay Quevedo his wages promptly upon termination. (<u>See</u> SAC ¶¶ 28–33.) This qualifies as an "employment-related legal dispute" covered by the arbitration agreement. (<u>See</u> Noeth Decl., Ex. B at 37.) Nothing in the arbitration Plan Document would appear to preclude Plaintiff from pursuing this <u>individual</u> claim for civil penalties in arbitration, and the agreement expressly provides that the same remedies that would be available in court are available in arbitration. (<u>Id.</u>, Ex. B at 41.)

Plaintiff, however, cannot pursue his PAGA claim on behalf of other employees in arbitration. The agreement denies the arbitrator "the power to hear an arbitration as a class or collective action" and clarifies that a collective action "involves representative members of a large group, who claim to share a common interest, seeking relief on behalf of the group." (<u>Id.</u>, Ex. B. at 40) This provision would bar Plaintiff from pursuing his PAGA claim "on behalf of . . . other current or former employees," because Plaintiff would be representing, and seeking relief on behalf of, a group.

The fact that Plaintiff's PAGA claim on behalf of others is not arbitrable, however, does not mean that it can proceed in this Court. Plaintiff agreed to submit his employment-related claims to arbitration, and he has cited no authority suggesting that he can pursue PAGA claims in court on behalf of others without also pursuing them on behalf of himself. To the contrary, the PAGA statute indicates that employee can pursue claims on behalf of others only if he also pursues claims on behalf of himself: the statute allows an aggrieved employee to bring a civil action "on behalf of himself or herself <u>and</u> other current or former employees," not on behalf of himself <u>or</u> other employees. Cal. Labor Code § 2699(a) (emphasis added).

Plaintiff cites two cases purportedly holding that PAGA claims are not arbitrable, but these cases do not support his argument. First, in <u>Mathias v. Rent-a-Center, Inc.</u>, the court noted only that "the arbitration agreement specifically prohibits arbitration of PAGA claims." <u>Mathias v. Rent-a-Center, Inc.</u>, No. 10-1476, 2010 WL 4386695, at *3 (E.D. Cal. Oct. 28, 2010). This

LINK: 61

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|----------|------------------------|------|---------------|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

case addressed the terms of a particular arbitration agreement and thus says nothing about whether PAGA claims are arbitrable as a matter of law.

The second case that Plaintiff cites is more on-point, but nonetheless unavailing. In Franco v. Athens Disposal Co., Inc., the California Court of Appeal held unenforceable an arbitration agreement that contained a class arbitration waiver and a provision prohibiting an employee "from acting as a 'private attorney general'" to recover civil penalties on behalf of other employees. Franco v. Athens Disposal Co., Inc., 90 Cal. Rptr. 3d 539, 555–56 (Ct. App. 2009). The court explained that a PAGA action "is fundamentally a law enforcement action designed to protect the public and penalize the employer for past illegal conduct." Id. at 556. The court reasoned that the arbitration agreement at issue "sought to nullify the PAGA and preclude [the plaintiff-employee] from seeking civil penalties on behalf of other current and former employees, that is, from performing the core function of a private attorney general." Id. at 558. The provision barring representative PAGA actions in arbitration was accordingly invalid because it "impede[d] Gentry's goal of 'comprehensively enforcing' a statutory scheme trough the imposition of 'statutory sanctions' and 'fines.'" Id. (quoting Gentry, 165 P.3d 556) (alterations omitted).

This reasoning is no longer tenable in light of the Supreme Court's recent decision in AT&T v. Concepcion, 131 S. Ct. 1740. In that case, the Supreme Court held that, under the FAA, states could not "condition[] the enforceability of . . . arbitration agreements on the availability of classwide arbitration procedures." Id. at 1744, 1753. The Court concluded that the FAA preempted "state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives" of "promot[ing] arbitration" and "ensur[ing] that private arbitration agreements are enforced according to their terms." Id. at 1748, 1749 (internal quotations and alteration omitted). The Court concluded that requiring class arbitration when an arbitration agreement precluded it was "inconsistent with the FAA" because class arbitration "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment" and because "class arbitration greatly increases risks to defendants," as "[t]he absence of multilayered review makes it more likely that errors will go uncorrected." Id. at 1750–51, 1752. The Court further explained that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." Id. at 1753. Because class arbitration was inconsistent with the FAA, states could not compel it. See id.

For similar reasons, requiring arbitration agreements to allow for representative PAGA claims on behalf of other employees would be inconsistent with the FAA. A claim brought on behalf of others would, like class claims, make for a slower, more costly process. In addition,

LINK: 61

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

representative PAGA claims "increase[] risks to defendants" by aggregating the claims of many employees. See id. at 1752. Defendants would run the risk that an erroneous decision on a PAGA claim on behalf of many employees would "go uncorrected" given the "absence of multilayered review." See id. Just as "[a]rbitration is poorly suited to the higher stakes of class litigation," it is also poorly suited to the higher stakes of a collective PAGA action. See id. The California Court of Appeal's decision in Franco shows only that a state might reasonably wish to require arbitration agreements to allow for collective PAGA actions. See Franco, 90 Cal. Rptr. 3d at 558. AT&T v. Concepcion makes clear, however, that the state cannot impose such a requirement because it would be inconsistent with the FAA. See Concepcion, 131 S. Ct. at 1753.

For these reasons, the Court concludes that Quevedo's PAGA claim is arbitrable, and that the arbitration agreement's provision barring him from bringing that claim on behalf of other employees is enforceable.

**D. DISPOSITION**

For the reasons set forth above, the Court **GRANTS** Macy's motion to compel arbitration. Macy's requests that this Court grant its motion and stay the action pending completion of arbitration. (Mem. at 24.) It appears to the Court, however, that dismissal would be more appropriate. All claims are arbitrable, and it appears that nothing will remain for the Court to decide once the arbitration is complete. In addition, the arbitration agreement appears to require a dismissal in these circumstances. It provides that "[i]f a party file a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program." (Noeth Decl., Ex. B at 37.) Under the agreement, a stay is warranted only where "a party files a lawsuit in court involving claims that are, and other claims that are not, subject to arbitration." (Id.) That is not the situation here.

The FAA authorizes a court to grant a stay pending arbitration, but it does not "limit the court's authority to grant a dismissal" where the court requires a plaintiff "to submit all claims to arbitration." Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988). Moreover, Circuit law teaches that dismissal is proper even where the party who moves to compel arbitration only requests a stay pending arbitration. Id. at 637–38 (9th Cir. 1988). The Court, however, "must give notice of its intention to dismiss and give the plaintiff some opportunity to respond unless the plaintiff[] cannot possibly win relief." Id. at 638 (internal quotations and alteration omitted).

LINK: 61

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1522 GAF (MANx) | Date | June 16, 2011 |
|---|---|---|---|
| Title | Carlos A Quevedo v. Macy's, Inc. et al | | |

Quevedo and Macy's are hereby **ORDERED TO SHOW CAUSE** why this case should not be dismissed rather than stayed.  The Court notes that it would consider a stay appropriate if there appeared to be "disputes as to the arbitrability of certain aspects of the case."  See Lee v. Goldline Int'l, Inc., No. 11-1495, 2011 WL 1739989, at *2 n.1 (C.D. Cal. Apr. 27, 2011).  Quevedo and Macy's shall each file a written response to this Order, not to exceed five (5) pages, by no later than July 1, 2011.  **A failure to file a timely response will be deemed consent to dismissal of the action.**

### IV.  CONCLUSION

For the foregoing reasons, Macy's motion to compel arbitration is **GRANTED**.  It appears to the Court that, because all claims must be submitted to the arbitrator, dismissal is warranted.  The parties are therefore **ORDERED TO SHOW CAUSE** why this case should not be dismissed rather than stayed.  The parties shall file written responses to this Order, not to exceed five (5) pages by no later than July 1, 2011.

**IT IS SO ORDERED.**